UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.** **CV 17-6104-MWF (JCx)**                    **Date:  November 27, 2018**

Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

Present:   <u>The Honorable MICHAEL W. FITZGERALD, U.S. District Judge</u>

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: MOTION FOR RULE 23 CLASS
CERTIFICATION [36] AND MOTION FOR FLSA
CONDITIONAL CERTIFICATION AND FOR AN
ORDER CIRCULATING 29 U.S.C. § 216(b)
NOTICE [37]

     Before the Court are two motions by Plaintiffs Jose Fernandez, Alex Yong, and
Joshua Boswell, filed on September 14, 2018:

     First, there is the Motion for Rule 23 Class Certification (the "Certification
Motion").  (Docket No. 36).  On October 29, 2018, Defendants Bank of America, N.A.
and Bank of America Corporation (together "Bank of America") filed an Opposition
(the "Certification Opposition").  (Docket No. 39).  Plaintiffs filed a Reply (the
"Certification Reply") on November 5, 2018.  (Docket No. 42).

     Second, there is the Motion for FLSA Conditional Certification and for an Order
Circulating 29 U.S.C. § 216(b) Notice (the "FLSA Motion").  (Docket No. 37).  On
October 29, 2018, Bank of America filed an Opposition (the "FLSA Opposition").
(Docket No. 40).  Plaintiffs filed a Reply (the "FLSA Reply") on November 5, 2018.
(Docket No. 43).

     The Court has read and considered the papers filed on the two motions and held
a hearing on November 19, 2018.  For the reasons discussed below, the motions are
ruled upon as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:        Jose Fernandez, et al. v. Bank of America, N.A., et al.

- The Certification Motion is **DENIED** in its entirety.  Plaintiffs fail to present clear evidence of any specific policy governing the employment status (exempt versus non-exempt) of Bank of America's lending officers.  Rather, Plaintiffs rely on a common incentive plan, which does not speak to if or how lending officers were misclassified.  Thus, individualized determination about each class member's exemption status is likely to overwhelm common issues; and

- The FLSA Motion is **DENIED** in its entirety.  Plaintiffs fail to establish that they are "similarly situated" to other members of the proposed collective action. Determining whether lending officers are "exempt" or "non-exempt" from the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 *et seq.*, requirement for overtime compensation involves a highly individualized inquiry into daily job responsibilities of each lending officer.

## I.   BACKGROUND

Plaintiffs Jose Fernandez and Alex Yong initiated this action on August 17, 2017.  (Complaint (Docket No. 1)).  On April 6, 2018, this action was consolidated with *Boswell v. Bank of America Corp., et al.*, No. 2:17-cv-6120-MWF (RAOx). (Docket No. 29).

On a motion for class certification, "a court must accept the substantive allegations in the complaint as true . . . ."  *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 568 (C.D. Cal. 2012).  Accordingly, the following allegations are drawn from the Complaints in the two actions as well as various declarations and exhibits submitted by the parties:

Putative lead Plaintiffs were previously employed by Bank of America: Plaintiff Boswell as a mortgage loan officer from September 2015 to March 2017, Plaintiff Yong as a mortgage lending officer from October 2013 to September 2014, and Plaintiff Fernandez as a mortgage originator from September 2013 to October 2014. (*See* Declaration of Joshua Boswell ("Boswell Decl.") ¶ 2 (Docket No. 36-8); Declaration of Alex Yong ("Yong Decl.") ¶ 3 (Docket No. 36-9); Declaration of Jose Fernandez ("Fernandez Decl.") ¶ 3 (Docket No. 36-10)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

Plaintiffs' roles are generically referred to as lending officers, whose primary responsibility is to provide advice to Bank of America clients and prospective clients as to their mortgage needs.  Lending officers either work out of a Bank of America financial center, which is a "Bank of America branch where customers walk in and do banking business", or a Home Loan Center, which is an administrative office not open to customers.  (Declaration of Joshua H. Haffner on September 13, 2018 ("Haffner Decl. I") Ex. 10 at 15:7–17, 24:23–25:1 (Docket No. 36-1)).

The origination of mortgage loans that Bank of America underwrites are either "bank sourced" or "self-sourced."  (*Id.* at 22:2–7).  Bank sourced refers to mortgage loans provided to clients who seek out Bank of America's services by, for example, walking into a Financial Center; self-sourced refers to mortgage loans originated by lending officers through independent referrals or networking, as opposed to "business from a financial center."  (*Id.* at 17:11–16; 22:8–11).  Approximately 90% of lending officers work at financial centers while the remaining 10% are self-sourced and work out of Home Loan Centers.  (*Id.* at 18:8–20, 23:7–24:22).  The lending officers working out of the financial centers "have a desk [there]" and are expected but not required "to be there daily."  (*Id.* at 16:12–17, 25:11–12).  Moreover, the lending officers, including Plaintiffs, are alleged to have spent more than 50% of their work time in their financial centers.  (*See* Boswell Decl. ¶ 4; Yong Decl. ¶ 4; Fernandez Decl. ¶ 5).  In fact, as far as generating business for bank sourced loans, there is allegedly no "need for a [l]ending [o]fficer to be outside of the office."  (Haffner Decl. I, Ex 10 at 22:17–21).

All lending officers are compensated according to a minimum salary and an incentive plan that has existed since at least January 1, 2013, and their individually negotiated employment offer.  (*See id.*, Ex. 1).  Under the terms of the incentive plan, lending officers have a monthly fixed "draw" against the adjusted commissions they generate.  (*See id.*, Ex. 4).  A lending officer earns compensation under the incentive plan only where the adjusted commissions exceed the amount of his or her draw.  If adjusted commissions earned for a given month are not enough to cover the draw, then a "deficit is created which is carried forward" to future pay periods.  (*See id.*, Ex. 1 at 3).  The draw deficit continues to accrue until a lending officer's adjusted commissions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

finally exceed the balance.  (*Id.*).  For an initial period at the beginning of each lending officer's employment, the draw is non-recoverable, meaning that any deficit is not carried forward.  (*Id.*).  An Incentive Plan Agreement included in the lending officer's employment offer summarized the scheme in the following chart:

Calculation #1a:  The Adjusted Commissions are greater than or equal to the Draw Advanced (non-recoverable).



Calculation #1b:  The Adjusted Commissions are greater than or equal to the Draw (recoverable) and any deficit carried forward from the previous month.



Calculation #2a:  The Adjusted Commissions are less than the Draw (non-recoverable).



Calculation #2b:  The Adjusted Commissions are less than the Draw (recoverable).



(*See id.*, Exs. 1–3).  The addendum to Plaintiffs' offer letters also states:

> Draw – As a [lending officer] you will receive a draw each pay period.  A draw is defined as a fixed and regularly recurring wage advance against future adjusted commissions and other performance-based compensation.  The draw is reconciled against future adjusted commissions and other compensation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018

Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

(*See id.*, Exs. 4–6).

Between August 2012, and November 2016, all lending officers had a title of "Mortgage Loan Officer" or "Senior Mortgage Loan Officer," both of which Bank of America classified as exempt.  (*Id.*, Ex. 11 (Declaration of Andrew Barrall ("Barrall Decl.") ¶ 2)).  In November 2016, Bank of America renamed and reclassified its lending officers.  (*Id.*).  The titles are now "Senior Lending Officer," "Financial Center Lending Officer," "Senior Financial Center Lending Officer – Exempt," and "Senior Financial Center Lending Officer – Non-Exempt."  (*Id.*).  The roles of "Senior Financial Center Lending Officer – Exempt," "Senior Financial Center Lending Officer – Non-Exempt," and "Financial Center Lending Officer" (also non-exempt) "are expected to work primarily out of Bank of America" financial centers.  (*Id.*).  The "Senior Lending Officer" role is an exempt position and may spent time working out of a financial center or elsewhere.  (*Id.*).

Plaintiffs allege that, following reclassification, there was "no difference" in the work or duties of lending officers before or after the reclassification.  (Haffner Decl. I, Ex. 10 at 20:10–13, 54:14–19).  Only Plaintiff Boswell, however, was employed after the reclassification and he continued to be an exempt employee.  (Boswell Decl. ¶ 2).  Moreover, the incentive plan described above did not change.  (Haffner Decl. I, Ex. 9 at 95:4–15).

Under the terms of their employment agreements, Plaintiffs were guaranteed to receive a salary of at least $455 per week.  But Plaintiffs' exact compensations during their employment and pursuant to Bank of America's incentive plan were as follows:

- Plaintiff Boswell earned $33,836.36 in 2015 (including a monthly draw of $3,210 in October and $15,500 in November and December), $621,195.66 in 2016 (including monthly draws of $3,120 from January to October and $4,000 in November and December), and $47,978.27 in 2017 (just for January).  (Declaration of Susannah Howard ("Howard Decl."), Ex. D ¶ 12 (Docket No. 41)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:        Jose Fernandez, et al. v. Bank of America, N.A., et al.

- Plaintiffs Fernandez and Yong had semi-monthly draws from between $1,386.67 and $3,000 and other incentive compensation.  (*Id.*, Exs. R–S).

Plaintiffs now allege that because the incentive plan did not provide any separate compensation for rest breaks or non-sales work activity (*e.g.*, meetings, providing customer service, or cross-selling other bank products for which they did not get commissions) and because there was a misclassification of their status as exempt, Bank of America violated various labor laws.  More specifically, Plaintiffs allege that Bank of America: (1) failed to pay rest periods, (2) failed to pay minimum wages, (3) failed to pay overtime wages, (4) failed to pay wages due at separation, and (5) violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  (Compl. ¶¶ 25–59).

In addition to their individual claims, Plaintiffs seek to represent one class and one subclass of lending officers in California and a class of similarly situated individuals nationwide.

## II.  <u>MOTION FOR CLASS CERTIFICATION</u>

Plaintiffs first seek to represent one class and one subclass of California employees, defined as follows:

1. **The Class**:  All current and former California residents who worked for Defendant at its financial centers selling or originating mortgages at any time beginning August 17, 2013 through the date notice is mailed to the Class; and

2. **The Overtime Subclass:**  All current or former California residents who worked for Defendant at its financial centers selling or originating mortgages at any time beginning August 17, 2013 through the date notice is mailed to the Class, and who were classified as exempt from overtime.

(Notice of Certification Mot. at 2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

### A.      Legal Standard

To obtain class certification, the putative lead plaintiffs must "satisfy each of the four requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and at least one of the requirements of Rule 23(b)."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)).  Plaintiffs seek to certify the classes under Rule 23(b)(3), which requires a showing that the classes meet the requirements of predominance and superiority.  *Id.*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (discussing relevance of "predominance" and "superiority" requirements of Rule 23(b)(3) to settlement classes).

"The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 609 (N.D. Cal. 2010) (citing, *inter alia*, *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).  "In adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied."  *Id.*  (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975)).

Numerosity and adequacy are present here, and Bank of America does not dispute these requirements.  The pleadings instead focus on commonality, typicality, predominance, and superiority.

### B.      Rule 23(a) Requirements

#### 1.      Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018

Title:        Jose Fernandez, et al. v. Bank of America, N.A., et al.

members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  The Court is not persuaded that the commonality requirement is satisfied here.

Plaintiffs argue that their theory of liability is based on the unlawfulness of Bank of America's incentive plan, as applicable to all class members.  (Certification Mot. at 11).  As to all class members, Plaintiffs argue that the draw against the adjusted commissions fails to compensate them for, among other things, rest breaks and non-sales hours worked.  (*Id.*).  This putative failure to adequately compensate the class members is asserted to be a class wide issue and requires resolution of common laws and facts.  (*Id.*).  In addition, Plaintiffs assert that whether or not the subclass of exempt lending officers is entitled to overtime is also "a common question of law and fact."  (*Id.*).

Bank of America, in turn, argues that the core issue is whether Plaintiffs or any lending officer was misclassified as exempt, entitling them compensation for rest breaks and other hours worked, and is "not capable of a common, class[ ]wide answer."  (Certification Opp. at 20).  As correctly noted by Bank of America, the incentive plan does not, and cannot, resolve this issue on a class wide basis.  The facts that lending officers are subject to the same incentive plan and may share some similar job responsibilities are not enough, given "the variation in how [lending officers] carry out" their job.  (*Id.* at 21).

This point is particularly important since Plaintiffs are alleging that they and other lending officers were undercompensated based on missed rest breaks and non-sales hours worked, requiring an individualized review of, among other things, whether the lending officer was correctly or incorrectly classified as exempt pre-November 2016, for those who continued to be exempt if that was an incorrect classification, and the specific breakdown of each lending officer's schedule.  A lending officer may be misclassified only pre-November 2016 (such as Plaintiffs Fernandez and Yong), only post-November 2016 (like none of the Plaintiffs), or during the entire class (such as Plaintiff Boswell).  And if the lending officers were misclassified, then the issue becomes an individual determination of the extent to which they were undercompensated according to the incentive plan.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

Plaintiffs have pointed to no evidence indicating that there was a policy mandating a certain number of hours that lending officers must devote to specific types of work.  Indeed, statements by Vijay Lala, Senior Area Lending Manager, undermine Plaintiffs' contention:

> Generally, Lending Officers tied to Financial Centers spent more time working in Bank of America facilities than those who were not.  However, I can't generalize about the amount of time Lending Officers spent in a Bank of America facility prior to November 2016 . . . The amount of time spent on specific duties may have changed [during the class period]. . . . The amount of time [lending officers] spent at the financial center would depend on their service level agreement [and could have been] for less than 50 percent of their time.

(Howard Decl., Ex. A at 15–16).

At the hearing, Plaintiffs disagreed and contended that Mr. Lala changed statements made in his original deposition.  But this contention is incorrect, as Mr. Lala's original deposition contains similar and consistent statements:

> Q:    And what is the requirement for Lending Officers that work at financial centers with respect to the amount of time they're supposed to be present there?
> A:    There isn't a specific time limit.  It's based on the traffic of that branch.  So some of them are there six days a week.  Some of them are there five days a week.  And so it really depends on the center.
> Q:    But they're generally expected to be there daily?
> A:    Yeah.
> Q:    During work hours?
> A:    Not specifically.  We know that some of them go out and generate their own self-source business, so they adjust their time accordingly.

(Haffner Decl. I, Ex. 10 at 9:4–16).

CIVIL MINUTES—GENERAL                                                      9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

At the hearing, Plaintiffs also argued that it is undisputed that financial center lending officers primarily spent their time handling bank sourced loans and pointed to Exhibit P of the Certification Motion.  The Court is not entirely convinced that this point is so clearly undisputed.  The relevant portion of Exhibit P states the following:

> Since May 2012, [lending] [o]fficers on my team have primarily been based out of Financial Centers, or out of a Home Loans Office (a non-customer-facing Bank of America office). . . . [Lending] [o]fficers on my team primarily based at Financial Centers *tend to engage in less self-sourcing activity* than those based at a Home Loans Office, because they have ready-access to new customers at their Financial Center.  By contrast, there are some [lending] [o]fficers on my team who are almost exclusively self-sourced.

(*Id.*, Ex. P (Declaration of Daniel Watt ¶ 4) (emphasis added)).  At best, an inference can be made that *some* financial center lending officers *may* have handled more bank sourced loans than other lending officers did at *some* point in time.

Plaintiffs have simply failed to point to any "common answers apt to drive the resolution of the [class action]."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Accordingly, the Court cannot conclude that the commonality requirement has been satisfied.

## 2.    Typicality

The typicality requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The "typicality" requirement is a permissive standard.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Id.*  "[T]he court should look at whether the class members have similar injuries, whether the wrongful activity is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct."  *In re Cooper Companies Inc. Securities Litig.*, 254 F.R.D. 628, 635 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

Cal. 2009) (quoting *Schaefer v. Overland Express Fam. of Funds*, 169 F.R.D. 124, 129–30 (S.D. Cal. 1996)).

Plaintiffs argue that their claims "arise out of the same pay plans, policies and procedure, and involve the same conduct by [Bank of America] and same legal theories." (Certification Mot. at 12).  Bank of America disagrees and argues that the typicality requirement is not satisfied because, while Plaintiffs seek to pursue claims on behalf of all lending officers who worked out of financial centers, not all of those lending officers were treated as exempt for the entire class.  (Certification Opp. at 24).  For example, after the reclassification in November 2016, a subset of lending officers, unlike Plaintiffs, became non-exempt employees.  This subset of lending officers may pursue class claims for under-compensation from Bank of America's failure to provide, among other things, rest breaks and payment for non-sales hours, without disputing their exemption status.  (*Id.*).

In response, Plaintiffs argue that "whether Plaintiffs were properly exempt is not a defense unique to them" and is available to the entire class prior to reclassification and certain reclassified employees.  (Certification Reply at 19).  Plaintiffs also argue that had Plaintiffs Fernandez and Yong worked for Bank of America until reclassification, they "would have presumably been reclassified" and the fact that they left their employment prior to reclassification has "no impact" on the typicality of the claims and defenses available.  (*Id.*).  The Court, however, is not persuaded and finds this reasoning far too speculative.

There appears to be several classes and subclasses of lending officers Plaintiffs hope to represent: (1) those who were exempt for the entire class period (like Plaintiff Boswell), (2) those who were exempt only pre-November 2016 but left Bank of America prior to the reclassification (like Plaintiffs Fernandez and Yong), and (3) those who were exempt and then reclassified as non-exempt in November 2016 (like none of the Plaintiffs).  Plaintiffs' class definition also contemplates those who were non-exempt only pre-November 2016, those who were non-exempt for the entire class period, and those who were non-exempt and then reclassified as exempt.  But because all lending officers are subject to the same incentive plan, the key inquiry then

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 17-6104-MWF (JCx)**                    **Date:** **November 27, 2018**

**Title:**      Jose Fernandez, et al. v. Bank of America, N.A., et al.

becomes whether potential class members were misclassified by Bank of America.
And the claims and availability of defenses of Plaintiffs (who were all exempt pre- and
post-November 2016) are not typical of those available to other classes (where there is
no dispute over exemption status). Rather, as noted by Bank of America, each class
may have undisputed claims and/or defenses that are not dependent on a dispute over
exemption status.

Perhaps recognizing this distinction, Plaintiffs in their Reply request the Court
consider and certify the following subclass:

> All current or former California residents who worked for [Bank of
> America] at its financial centers selling or originating mortgages at any
> time from the date of the November 2016 reclassification through the date
> notice is mailed to the Class, and who were classified as non-exempt.

(*Id.* at 20).

Plaintiffs did not mention this subclass in their Certification Motion and,
of course, the Court will not consider an argument raised for the first time in the
Certification Reply. *See, e.g.*, *Turtle Island Restoration Network v. U.S. Dept. of
Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012) ("[A]rguments raised for
the first time in a reply brief are waived.") (internal quotation marks and
citations omitted); *Wood v. TriVita, Inc.*, No. 08-cv-765-PHX, 2009 WL
2046048, at *5 (D. Ariz. Jan. 22, 2009) ("Defendants are correct that Plaintiff
cannot request certification of a class in the Reply that is different from the class
proposed in the Motion for Collective Action Certification without giving
Defendants an opportunity to respond.").

Accordingly, the typicality requirement has not been satisfied.

## C.    Rule 23(b)(3) Requirements

As noted above, Plaintiffs request class certification pursuant to Rule 23(b)(3),
which provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

… the court finds that the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that a class
action is superior to other available methods for fairly and efficiently adjudicating the
controversy."  Fed. R. Civ. P. 23(b)(3).

## 1.      Predominance

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship
between the common and individual issues' in the case," and tests whether the
proposed class is "'sufficiently cohesive to warrant adjudication by representation.'"
*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*,
150 F.3d at 1022).  "Common issues predominate over individual issues when the
common issues 'represent a significant aspect of the case and they can be resolved for
all members of the class in a single adjudication.'"  *Edwards v. First Am. Corp.*, 798
F.3d 1172, 1182 (9th Cir. 2015) (citing 7A Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1778 (3d ed. 1998)).

Plaintiffs argue that the claims of class members will be proven by
predominantly common evidence for several reasons:

***First***, Plaintiffs argue that Bank of America's incentive plan is "admittedly the
same for all proposed class members," indicating that the same question as to whether
the incentive plan properly compensates for, among other things, rest breaks and
premium wages predominates.  (Certification Mot. at 13–15).  But as noted above, the
key inquiry is not whether the incentive plan applies to all proposed class members.
Bank of America does not even appear to contest this point.  Rather, the key inquiry is
whether Plaintiffs and class members were misclassified as exempt such that while
they were under Bank of America's incentive plan, they were undercompensated for
rest breaks and premium wages.

***Second***, Plaintiffs argue that Bank of America's reclassification of certain
lending officers in November 2016 does not defeat predominance (Certification Mot.
at 18–19).  More specifically, Plaintiffs argue that Bank of America's "reclassification
of nearly all of its [l]ending [o]fficers as non-exempt in November 2016" is indicative

---

**CIVIL MINUTES—GENERAL**                                              **13**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

that those lending officers "were never exempt" in the first place and that Bank of America belatedly recognized this fact.  (*Id.* at 18).  Plaintiffs point to the following part of Mr. Lala's deposition for support:

> Q:    Why, then, were those Lending Officers classified as "exempt" before November 2016?
>
> [Objections omitted]
>
> A:    I don't know.

(Haffner Decl. I, Ex. 10 at 58:9–14).  Plaintiffs note that "the answer is obvious and speaks for itself," that these lending officers were never supposed to be exempt.  (Certification Mot. at 18).  Thus, Plaintiffs allege that they are entitled to compensation from missed rest breaks, minimum wages, and overtime.

The reclassification in November 2016 does not in itself prove a class-wide prior misclassification.  As pointed out by Bank of America, Mr. Lala's deposition does not "speak for itself" or creates the inference that the lending officers were previously misclassified.  (Certification Opp. at 19).  Instead, his deposition simply notes that he does not know the reason why certain lending officers were classified as exempt before November 2016.

Bank of America also notes that the reclassification was in response to "impending changes to the DOL [Department of Labor] thresholds" for employee compensation.  (*Id.*).  Bank of America points to a particularly persuasive case in the Southern District of Ohio with nearly identical facts that summarized the DOL changes and denied the plaintiff's motion for class certification on predominance grounds.  *Lindsey, et al. v. Tire Discounters, Inc.*, No. 15-cv-3065-GCS, 2017 WL 5972104, at *2 (S.D. Ohio Dec. 1, 2017).  There, the district court noted the following:

> In 2016, the DOL announced a proposed change to dollar threshold of the weekly salary required for the executive exemption.  The final rule was set to go into effect on December 1, 2016, and would have raised the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:        Jose Fernandez, et al. v. Bank of America, N.A., et al.

minimum weekly salary for exempt employees to the 40th percentile of
earnings of full-time salaried workers in the lowest-wage Census Region.
Thus, as of 2016, the final rule would have raised the weekly salary
requirement from $455 to $913.

In anticipation of this rule change, Tire Discounters had the choice of
either raising the [service managers'] salary to meet the new exemption
threshold (which, in many cases, would have meant increasing [their]
annual salaries by $15,000 or more), or re-classifying [service managers]
as non-exempt . . . Tire Discounters opted for the latter and ***all [service
managers] were reclassified as non-exempt as of October 31, 2016***.  Tire
Discounters did not implement any changes to [service managers'] job
duties in connection with the reclassification.

*Id.* (internal citations omitted and emphasis added).

As in *Lindsey*, Bank of America persuasively argues that it reclassified
certain lending officers in November 2016 to anticipate the DOL proposed
changes.  As in *Lindsey*, the job responsibilities of lending officers were similar
before and after reclassification.  And as in *Lindsey*, the reclassification of the
lending officers' position as non-exempt "does not assist the Court's analysis of
[the lending officers'] actual job duties" and whether common issues
predominate.  *Id.* at *7.

***Finally***, Plaintiffs argue that various exemptions asserted by Bank of America in
classifying its lending officers do not defeat predominance.  (Certification Mot. at 19–
22).  Plaintiffs point to three exemptions: (1) outside sales exemption, where an exempt
employee must spend over 50% of their time engaged in outside sales and sales-related
activity; (2) the primarily commission or inside salesperson exemption, where overtime
requirements do not apply to an employee whose earnings exceed one and one-half
times the minimum wages if more than half of that employee's compensation
represents commissions; and (3) the administrative exemption, applicable to exempt an
employee who earns a monthly salary equivalent to no less than two times the state
minimum wage for full-time employment.  (*Id.*).  Plaintiffs note that while certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                        Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

exemptions apply only to certain claims (*e.g.*, the primarily commission exemption applies only to the claim for overtime wages), predominantly common evidence will prove "the lack of applicability" of the exemptions.  (*Id.* at 20).

In response, Bank of America argues that because Plaintiffs' proposed classes require the Court to "resolve the exempt status of each individual class member," the individual inquiries will "overwhelm any common contentions" purportedly noted by Plaintiffs. (Certification Opp. at 22).  Most notably, Bank of America contends that it relied on "different exemptions for different [lending officers] during the class period . . . [based on the] variation in how [lending officers] perform their job responsibilities." (*Id.* at 12).

The Court agrees with Bank of America and views the Ninth Circuit's decision in *In re Wells Fargo Home Mortg. Overtime Pay Litig. (Wells Fargo I)*, as particularly instructive.  *See* 571 F.3d 953 (9th Cir. 2009).  There, the plaintiffs were current and former home mortgage consultants who were employed by Wells Fargo in California and, like here, compensated based upon a "commission system . . . [that] include[s] a minimum, non-recoverable draw against commissions." *Id.* at 955.  Wells Fargo treated nearly all of its home mortgage consultants as exempt.  *Id.*

A group of consultants, believing that they were incorrectly classified as exempt, brought a class action against Wells Fargo for violation of various state and federal labor laws.  *Id.*  The district court noted that "individual inquiries would be necessary with respect to five exemptions [Wells Fargo relied upon to classify its consultants]," including the three exemptions in play in this action.  *Id.* at 956.  The district court further noted that these exemptions "would require an analysis of the job experiences of the individual employees, including the amount of time worked by each [consultant], how they spend their time, where they primarily work, and their levels of compensation." *Id.*  But "[d]espite the conclusion that numerous individualized inquiries would be necessary, the district court ultimately granted certification." *Id.*

The Ninth Circuit reversed the district court's class certification and noted that the existence of various exemptions "may make class treatment difficult if not impossible" and the individual variations in the consultants' responsibilities "were not

CIVIL MINUTES—GENERAL                                                        16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

susceptible to common proof." *Id.* at 958.  The Ninth Circuit finally noted that the
"fact that an employer classifies all or most of a particular class of employees as
exempt does not eliminate the need to make a factual determination as to whether class
members are actually performing similar duties." *Id.* at 959 (citation omitted).  After
reversal and remand, the district court denied the plaintiffs' renewed motion for class
certification.  *In re Wells Fargo Home Mortg. Overtime Pay Litig. (Wells Fargo II)*,
268 F.R.D. 604, 614 (N.D. Cal. 2010).

The scenario in *Wells Fargo II*, then, is quite similar to that here:  Bank of
America asserts various exemptions as defenses to class certification, the resolution of
which depends upon how lending officers spend their time at work.  Therefore,
common issues of law or fact cannot predominate over the individualized inquiries
unless Plaintiffs propose some form of common proof other than a common incentive
plan that does not speak to how and where employees perform their jobs.  Plaintiffs
have simply failed to point to any class-wide evidence that lending officers were
misclassified as exempt.

At the hearing, Plaintiffs argued that a recent case, *Peterson v. Alaska
Communications Systems Group, Inc.*, is directly comparable.  *See* No. 12-cv-90-TMB,
2018 WL 4100665 (D. Alaska Aug. 28, 2018).  *Peterson* involved a class of potential
plaintiffs who were employed as Client Account Managers ("CAMs") and all classified
as exempt under the outside sales exemption.  *Id.* at *1.  The plaintiffs pointed to
evidence that all CAMs "performed the same job duties and tasks, and that these duties
and tasks were reflected in job descriptions, job postings, and performance appraisal
materials."  *Id.* at *14.

The plaintiffs also noted that the company "exercised close control over the sales
process, by both training CAMs on their specific sales process, and expecting CAMs to
follow this sales process when interacting with clients."  *Id.*  For instance, the
defendant required CAMs to follow a seven-step "Alaska Communications Sales
Process" and "exercised control over this process through controlling the pricing of
products, establishment of sales revenue quotas, and routine check-in meetings of
CAMs work."  *Id.*  Perhaps most strikingly, all "CAMs' work schedules were subject

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-6104-MWF (JCx)                    Date: November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

to control by [the defendant]" and are required to work according to that schedule. *Id.*
Evaluating this evidence, the district court began by noting that "determining whether
common questions will predominate over individual questions here is a close
question," but concluded there was enough common proof to justify certifying the
class. *Id.* at *14–15.

The situation in *Peterson* is easily distinguishable from the situation here.
Plaintiffs have not shown or even alleged that lending officers are subject to a specific
process controlled by Bank of America. Rather, the "amount of time spent on specific
duties may have changed [during the class period and] . . . [t]he amount of time
[lending officers] spent at the financial center would depend on their service level
agreement." (Howard Decl., Ex. A at 15–16). Plaintiffs also note the similarity of the
proposed class members' "job descriptions and uniform sales process for which [they]
receive training, and close management and supervision." (Reply at 4).

But in support of this argument, Plaintiffs point to their annual performance
reviews and logs of training workshops they attended and/or completed. (*Id.*;
Declaration of Joshua H. Haffner on November 5, 2018 ("Haffner Decl. II") Exs. 3–6
(Docket No. 44)). The reviews and logs do not support the contention that Bank of
America had a uniform sales policy or exercised close management and supervision
over the lending officers. And unlike the company in *Peterson*, Bank of America does
not control the lending officers' work schedules.

Mr. Lala's deposition testimony confirms these conclusions:

Q:      What about meetings, are there ever any meetings that Lending Officers
        are required to attend?
A:      Which Lending Officers?
Q:      Any.
A:      Sure. There's training sessions they have to take. There's, you know,
        staff meetings that I have that are virtual because of my vast territory . . .
Q:      But they're required to attend these meetings?
A:      Yes, in some instances. They're not all required.

CIVIL MINUTES—GENERAL                                        18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

(Haffner Decl. I, Ex. 10 at 42:14–20, 43:2–3).

At the hearing, Plaintiffs also argued that Bank of America abandoned the
outside sales exemption because Bank of America primarily relied upon that
exemption prior to the November 2016 reclassification but not after.  However, many
lending officers are still classified as exempt based on the outside sales exemption.
Indeed, Bank of America explicitly notes this in opposing certification: "[M]any
[lending officers] spent and still do spend significant time away from Bank of America
locations attending networking events, meeting with customers, and promoting Bank
of America's mortgage products off-site."  (Certification Opp. at 13).

Accordingly, the predominance requirement has not been satisfied.

## 2.    Superiority

"The purpose of the superiority requirement is to assure that the class action is
the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar
Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Charles
Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1779 at
174 (3d ed. 2005)).  The superiority "determination necessarily involves a comparative
evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at
1023.

Plaintiffs argue that a class action is the superior method to resolve their and
class members' dispute against Bank of America.  (Certification Mot. at 23).  But as
noted above, resolving the propose class members' claims would require "countless
individual inquiries" and potentially "hundreds of mini-trials" that would be
unmanageable in one action.  (Certification Opp. at 24).  Plaintiffs even appear to
recognize that there is no efficient or uniform method of calculating damages.  For
example, Plaintiffs suggest that unpaid rest breaks can be established by "calculating
the number of qualifying shifts" each lending officer is entitled to while premium
wages can be established by calculating the amount of non-sales time and overtime
each lending officer worked during the class period.  (Certification Mot. at 23–24).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

The Court, however, is convinced, as the class action "would be consumed by
individualized inquiries into how each class member spent his or her day, making a
class action no better than numerous individual actions." *Wells Fargo II*, 268 F.R.D. at
614.  Therefore, the superiority requirement has not been satisfied.

Accordingly, the Certification Motion is **DENIED** in its entirety.

## III.   **MOTION FOR FLSA CONDITIONAL CERTIFICATION**

Plaintiffs next seek to represent one nationwide class of similarly situated
individuals, defined as follows:

1.       **The Class**:  All persons who currently or formerly worked for [Bank of
America] at its financial centers in the United States of America selling or
originating mortgages at any time beginning August 17, 2014 until the
date of judgment after trial, and who were classified as exempt from
overtime.

(FLSA Mot. at 9).

### A.   **Legal Standard**

An action against an employer for violations of the FLSA may be brought by an
employee on behalf of herself and "other employees similarly situated," called a
"collective action."  A collective action is "fundamentally different" from a class
action under Rule 23.  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).
For example, a putative member in a class action must request exclusion to avoid the
binding effects of the class judgment, Fed. Rule Civ. P. 23(c)(2)(B)(v), but a person
desiring membership in a collective action must opt in.  § 216(b).  The strict
certification requirements of Rule 23 class actions do not apply to the more lenient
certification requirements of FLSA collective actions.  *Mitchell v. Acosta Sales, LLC*,
841 F.Supp.2d 1105, 1116 (C.D. Cal. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:     Jose Fernandez, et al. v. Bank of America, N.A., et al.

The only requirement for certification of FLSA collective actions is that putative class members be "similarly situated."  § 216(b).  FLSA does not define this phrase, and neither the Supreme Court nor the Ninth Circuit has offered interpretative instruction.  *See Yousif v. The Venetian Casino Resort, LLC*, No. 16-cv-2941-RFB, 2018 WL 5074679, at *2 (D. Nev. Sept. 24, 2018); *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. supp. 3d 1117, 1130 (E.D. Cal. 2018).  Courts within this District analyze whether members of the collective action are "similarly situated" at two separate stages of litigation: first when plaintiffs initially seek to certify the class, and later following discovery.  *Mitchell*, 841 F. Supp. 2d at 1116.

During the first stage, typically before discovery, the purpose is to simply notify putative members of an FLSA collection action.  *Mitchell*, 841 F. Supp. 2d at 1115.  Courts typically have limited evidence and decide whether the parties are "similarly situated" based primarily on the pleadings and any affidavits submitted by the parties.  *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  The factual showing required of plaintiffs at this stage is generally described as "modest."  *Mitchell*, 841 F. Supp. 2d at 1115 (citing *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008)).

During the second stage, typically after discovery is complete and putative class members have had opportunity to opt in, the purpose is to undertake a second, more rigorous evaluation of whether the employees are indeed similarly situated.  *Id.*  This determination is based three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations."  *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 n.1 (C.D. Cal. 2006) (citation omitted).  At this stage, a district court may decertify a collective class and dismiss the opt-in plaintiffs without prejudice if it finds the employees are not similarly situated.  *Mitchell*, 841 F. Supp. 2d at 1115.

B.    **First or Second Stage**

Plaintiffs argue that the Court should apply the more lenient standard of the first stage for FLSA conditional certification until after the parties have had a full

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

opportunity to exhaust discovery.  (FLSA Mot. at 12).  In response, Bank of America
offers several reasons why the Court should apply the stricter standard of the second
stage: Plaintiffs commenced this action over a year ago, the parties have conducted all
necessary certification discovery, all three named Plaintiffs have been deposed, and
Plaintiffs moved for class certification on the very last possible day.  (FLSA Opp. at
12).  Bank of America also cites numerous cases where district courts applied or were
opened to applying the strict standard at the initial certification stage.  (*Id.* at 12–13).

The Court, however, is not persuaded that the stricter standard should apply.  As
noted by Plaintiffs, the fact that Bank of America believes substantial and "all
necessary certification discovery" has been conducted is not indicative that the stricter
standard is applicable.  (FLSA Reply at 2).  The deadline for conducting discovery has
not passed and Plaintiffs argue that they are "still actively engaged in certification-
related discovery."  (*Id.* at 2–3); *see Gerlach v. Wells Fargo & Co.*, No. 05-cv-585-
CW, 2006 WL 824652, at *3 (N.D. Cal. Mar. 28, 2006) (noting that to "apply second-
tier heightened review" before the close of discovery would be "contrary to the broad
remedial policies underlying the FLSA").

The cases cited by Bank of America are also distinguishable.  For example, in
*Smith v. T-Mobile USA, Inc.*, the district court applied the strict standard because there
was no dispute that certification-related discovery was closed.  No. CV 05-5274-ABC
(SSx), 2007 WL 2385131, at *4 (C.D. Cal. Aug. 15, 2007).  In *Wren v. Rgis Inventory
Specialists*, the district court noted that:

> Given that discovery has not yet closed and Plaintiffs are far from
> completing the discovery they seek with respect to certification issues,
> this Court, like the court in *Gerlach*, concludes that the appropriate
> standard for resolving Plaintiffs' conditional certification motion is the
> more lenient standard that is applied by the majority of courts in
> addressing this question.

*See* No. 06-cv-5778-JCS, 2007 WL 4532218, at *5 (N.D. Cal. Dec. 19, 2007).  Finally,
in *Carter v. Anderson Merchandisers, LP*, the district court applied the lenient first
stage standard because "the parties have not finished discovery on class issues" and the

---

CIVIL MINUTES—GENERAL                                                     22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

defendant is improperly seeking to "convert the motion into one for final certification." No. 08-edcv-25-VAP (OPx), 2008 WL 2783193, at *5 (C.D. Cal. July 10, 2008).

Given that the parties here dispute whether certification-related discovery has been completed, the Court concludes that it is more appropriate to apply the lenient standard of the first stage.

## C.    Similarly Situated

Plaintiffs next argue that the proposed class is "a group of similarly situated individuals who were all victims of the same [Bank of America] plan, policy[,] and procedures for [lending officer's] compensation."  (FLSA Mot. at 9).  Once again, Plaintiffs rely on the facts that lending officers "working at financial centers were misclassified as exempt from overtime" and the incentive plan failed to adequately compensate them.  (*Id.* at 12–14).  Plaintiffs also point to various employment exemptions, discussed above, and Bank of America's reclassification in November 2016 as evidence that the lending officers "were never exempt from overtime" in the first place.  (*Id.* at 14–15).

In opposition, Bank of America argues, and the Court agrees, that Plaintiffs and the proposed class are not "similarly situated" for two main reasons:

*First*, Bank of America argues that because Plaintiffs' proposed collective action include only exempt employees who were not reclassified, the threshold inquiry to determine whether the lending officers are "similarly situated" is to determine if any of them were in fact "misclassified as exempt employees during the relevant period." (FLSA Opp. at 13).  The crux of Plaintiffs' conditional certification argument is that Bank of America owes misclassified lending officers overtime for time worked over forty hours and on weekends.  (FLSA Mot. at 9, 12–13).  But Plaintiffs have failed to point to what common evidence they and the proposed class will rely on to prove the merits of their collective action apart from the incentive plan.  Whether or not a Bank of America lending officer is "exempt" under relevant labor laws is not dependent on the incentive plan itself.  Rather, that determination involves an analysis of each individual lending officer's daily responsibilities, agreement with the financial centers,

CIVIL MINUTES—GENERAL                                                        23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018

Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

and other disparate factual and employment settings, and whether the combination of those consideration meet certain statutory and administrative exemptions.  After that determination, the analysis then turns to whether and to what extent the lending officers are entitled to unpaid overtime compensation.

Indeed, other courts in similar cases concerning whether lending officers were exempt have concluded that the strong need for individual determination makes a collective action an unwieldy method for resolution.  *See, e.g.*, *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265 (M.D. Ala. 2004) ("[T]the 'similarly situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt."); *Pfohl v. Farmers Ins. Group*, No. 03-cv-3080-DT, 2004 WL 554834, at *9 (C.D. Cal. Mar. 1, 2004) ("The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case."); *Trinh v. JP Morgan Chase & Co.*, No. 07-cv-1666-TJW, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) ("If the ultimate issue to be determined is whether each employee was properly classified as exempt under the FLSA, the 'similarly situated' inquiry must be analyzed in terms of the nature of each putative plaintiff's job duties.").

In response, Plaintiffs note that the Court is only asked to "determine that Plaintiffs and the proposed Class they seek to represent in this action are 'similarly situated,'" and now "is not the time to evaluate the merits of [P]laintiffs' claims or [Bank of America's] defenses."  (FLSA Reply at 5–6).  But recognizing that Plaintiffs have not successfully demonstrated that they plan to rely on common evidence is not a determination on the merits.  The Court is neither ruling whether Plaintiffs or any proposed class members have a viable claim for overtime compensation nor concluding that Bank of America's defenses will be dispositive.  Rather, the Court looks to the legal framework against which any lending officer must establish that he or she is exempt or non-exempt, and what potential evidence must be presented. Indeed, the facts that Bank of America reclassified some lending officers as non-exempt after November 2016 and maintained the exemption status of other lending officers strongly suggest that some individualized inquiries were involved.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018

Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

At the hearing, Plaintiffs, again relying on the incentive plan, argued that lending officers nationwide are similarly situated in that they are not paid a "free and clear" salary.  Plaintiffs pointed to *Takacs v. A.G. Edwards and Sons, Inc.*, for support.  444 F. Supp. 2d 1100 (S.D. Cal. 2006).  But the incentive plan at issue in *Takacs* was quite different, since the employer in that case could deduct "an offset from the guaranteed salary" from an employee's draw in subsequent paychecks.  *Id.* at 1107–10.  Such a deduction is not present here.  For example, "[t]hroughout his employment, Plaintiff Boswell always received a monthly draw, paid twice monthly, of over $455 per week."  (FLSA Opp. at 17).

***Second***, Bank of America argues that Plaintiffs have not submitted "meaningful evidence demonstrating, at a minimum, the existence of some sufficient similarity across employees/geographic locations."  (FLSA Opp. at 21).  Even if the Court were to assume that Plaintiffs have adequately alleged that Bank of America's improper misclassification of lending officers as exempt was an institution-wide practice, Plaintiffs still have not detailed the extent to which all Bank of America lending officers, nationwide, are similar.  Rather, Plaintiffs attempt to establish that all lending officers are all subject to the same incentive plan and, wherever they may be, are subject to "uniform policies governing employee conduct."  (FLSA Reply at 6).

But as noted above, this conclusion is incorrect, as lending officers are actually governed by their individual service agreement with the financial center:

> Generally, Lending Officers tied to Financial Centers spent more time working in Bank of America facilities than those who were not.  However, I can't generalize about the amount of time Lending Officers spent in a Bank of America facility prior to November 2016 . . . The amount of time spent on specific duties may have changed [during the class period]. . . . The amount of time [lending officers] spent at the financial center would depend on their service level agreement [and could have been] for less than 50 percent of their time.

(Howard Decl., Ex. A at 15–16).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-6104-MWF (JCx)                    Date:  November 27, 2018
Title:      Jose Fernandez, et al. v. Bank of America, N.A., et al.

Several courts have also concluded that merely alleging that a class of employees was wrongly designated "exempt" does not constitute a showing of an unlawful, institution-wide policy sufficient for conditional certification under FLSA. *See, e.g.*, *Chemi v. Champion Mortg.*, No. 05-cv-1238–WHW, 2006 WL 7353427, at *6 (D.N.J. June 19, 2006) (finding allegation of improper exempt classification insufficient because if that were true "every case brought before the courts alleging improper designation as non-exempt employees would automatically qualify for conditional certification"); *Trinh*, 2008 WL 1860161, at *4 (denying conditional certification where "Plaintiffs' only allegation that Defendants engaged in a wrongful policy is that Defendants uniformly classified Plaintiffs and other loan officers as 'exempt'").

The Court is particularly persuaded by the differences between this action and *Carter*, where the plaintiffs set forth substantial allegations that they were "victims of a common policy allowing sales representatives to be classified as exempt," "provide[d] declarations from twenty-five Plaintiffs from eighteen states who Defendant classified as salaried employees," confirmed eighty-one salaried sales representatives for the proposed class, and most importantly, provided substantial evidence that "all [c]lass [m]embers were ***similarly situated with respect to their fundamental job duties***" without regards to any individual service agreements.  *See* 2008 WL 2783193, at *6 (emphasis added).

Accordingly, the Court concludes that Plaintiffs and members of the proposed collective action are not "similarly situated" to justify proceeding in a collective action. Because of this conclusion, the Court need not consider whether Plaintiffs' proposed Notice of Pendency of FLSA Collective Action Lawsuit Against Bank of America to all collective action members is reasonable.  The Court also need not consider whether the statute of limitations should be tolled for proposed collective action members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  **CV 17-6104-MWF (JCx)**                    **Date:  November 27, 2018**

Title:       Jose Fernandez, et al. v. Bank of America, N.A., et al.

## IV.   <u>**CONCLUSION**</u>

For the reasons discussed above, the Certification Motion and the FLSA Motion
are both **DENIED**.

IT IS SO ORDERED.