Joshua H. Haffner, Cal. Bar No. 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, Cal. Bar No. 303056
(gl@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa St., Suite 2325
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Paul D. Stevens, Cal. Bar No. 207107
(pstevens@stevenslc.com)
**STEVENS, LC**
700 S. Flower Street, Suite 660
Los Angeles, California 90017
Telephone: (213) 270-1211
Facsimile: (213) 270-1223

Attorneys for Plaintiffs JOSE FERNANDEZ, ET. AL.

Mark R. Thierman, Cal. Bar No. 72913
(mark@thiermanbuck.com)
Joshua D. Buck, Cal. Bar No. 258325
(josh@thiermanbuck.com)
Leah L. Jones, Cal. Bar No. 276448
leah@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Attorneys for Plaintiffs JOSHUA B. BOSWELL, ET. AL.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FERNANDEZ, ET AL, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive, <br><br> Defendant. | **Case No. 2:17-cv-06104-MWF-JC** <br> (consolidated with Case No.: 2:17-cv-06120-GW-RAO) <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** |
| JOSHUA B. BOSWELL, ET. AL., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, ET. AL.; <br><br> Defendant. | Hearing Date: January 28, 2019 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 5A <br><br> (Assigned to Hon. Michael W. Fitzgerald) |

# TABLE OF CONTENT

INTRODUCTION ..................................................................................................3

ARGUMENT .........................................................................................................5

    I.    CAMPBELL'S APPLICATION TO A FIRST-STEP CONDITIONAL FLSA CERTIFICATION RULING GIVES RISE SEVERAL CONTROLLING QUESTIONS OF LAW. ...................................................................................5

    II.    WHETHER THE COURT MAY WEIGH CONFLICTING EVIDENCE AT THE FIRST STEP OF THE CONDITIONAL CERTIFICATION ANALYSIS IS ALSO A CONTROLLING QUESTION OF LAW. .......................................10

    III.    INTERLOCUTORY REVIEW WOULD MATERIALLY ADVANCE THE ULTIMATE RESOLUTION OF THIS CASE. ..........................................15

CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ashcraft v. Welk Resort Group*, 2017 WL 5180421 (D. Nev. Nov. 8, 2017) ..................................................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 7

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) ..................................................................................................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 7

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825 (N.D. Cal. Dec. 21, 2018) ...................................................................................................... 5

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ...................................................................................................... 3

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .................................... 8

*Couch v. Telescope, Inc.*, 611 F.3d 629 (9th Cir. 2010) ..................................... 7

*Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536 (N.D. Cal. Dec. 10, 2012) ........................................................................................ 7

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217 (9th Cir. 2005) ........................................................................... 12

*Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) .................................. 4

*Lear Siegler, Inc. v. Adkins*, 330 F.2d 595 (9th Cir. 1964) ................................ 8

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681 (9th Cir. 2011) ....................................................................................................... 7

*Steering Comm. v. United States*, 6 F.3d 572 (9th Cir. 1993) ......................................................................................................... 8

*Updike v. Clackamas County*, 2016 WL 680536 (D. Or. Feb. 19, 2016) ........................................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................... 7

*Wynn v. NBC*, 234 F.Supp.2d 1067 (C.D. Cal. 2002) ..................................... 10

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ........................................................................................... 8

**Statutes**

28 U.S.C. §1292(b) ..................................................................................... 3, 16

29 U.S.C. §216(b) ........................................................................................ 3, 4

# INTRODUCTION

Plaintiffs' motion for Section 1292(b) certification (Dkt. 51 or "Motion") identified *several* "controlling question[s] of law" in the Court's November 27, 2018 Order "as to which there is substantial ground for difference of opinion," 28 U.S.C. §1292(b), any one of which would be sufficient to support certification.

First, plaintiffs demonstrated that the Court's analytical framework for determining whether to provisionally certify plaintiffs' Fair Labor Standards Act claims under Section 16(b) of the FLSA, 29 U.S.C. §216(b), is contrary to the framework now required by *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). Although Bank of America ("BofA" or "Bank") makes a series of arguments about why *Campbell* should be limited to its facts and to its second-step FLSA certification context, those arguments reinforce rather than detract from the appropriateness of Section 1292(b) certification, because they highlight the need for additional guidance from the Ninth Circuit as to the proper scope and application of its recent *Campbell* decision. Clearly, the disagreements between the parties as to how district courts should apply *Campbell* to first-step FLSA provisional certification raise important legal questions whose prompt determination by the Ninth Circuit would expedite the resolution of this case and provide needed guidance to the district courts.

Second, and independently, plaintiffs demonstrated that the Court's treatment of the changed deposition testimony of the Bank's Rule 30(b)(6) witness, Vijay Lala, raised a separate series of "controlling questions" within the meaning of Section 1292(b). Those questions include: whether any or all of those substantive, material changes to the Bank's designee's testimony (made almost two months after the fact, shortly after a mediation that revealed the inculpatory nature of his original responses) were a "sham" and should have been entirely disregarded; and whether, with or without those changes, a court applying the *Campbell* standards to first-step provisional certification is permitted to weigh

conflicting evidence and make credibility determinations, when the only issue at the threshold stage should be whether other employees exist who are similarly situated to the named plaintiffs and thus entitled to notice of the pendency of the action and their opportunity to file a Consent to Sue.  *See* Mot. at 17-25; *Campbell*, 903 F.3d at 1119.  Plaintiffs' request for certification does *not* simply rest on a disagreement about the facts, as the Bank asserts.  It rests upon series of sharply drawn legal disputes concerning the correctness of the legal standards this Court applied when considering those facts.

Finally, plaintiffs demonstrated that prompt interlocutory review of the Court's November 27 Order would necessarily advance the ultimate resolution of this litigation because it would greatly expedite the decision on whether the Bank's financial center-based lending officers throughout the country are entitled to receive a *Hoffmann-LaRoche* notice (advising them of their opportunity to join this pending action now, *see Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), rather than several years from now).  Absent interlocutory appeal, none of those similarly situated Bank lending officers would receive a notice of their Consent-to-Sue rights until *after* the completion of the three-plaintiff-only trial in this case and *after* the appeal from the final judgment in that case (which would be inevitable, whether plaintiffs win or lose).  At that distant date, the difficulty of locating and contacting those individuals means many will never receive notice, and fundamental workplace rights will be lost as a result.

The Bank weakly counters that any similarly situated lending officer could file his or her own lawsuit instead of joining this one.  But the whole point of *Hoffman-LaRoche* is to provide a mechanism for giving such similarly situated employees prompt notice of their FLSA rights, because many employees are unaware of those rights (and thus will not file lawsuits of their own).  Moreover, the reason Congress established an express right to pursue FLSA rights on a collective action basis in 29 U.S.C. §216(b) was to *encourage* similarly situated

employees to join their similar claims in a single proceeding; not only to promote judicial efficiency but to enable those employees to take advantage of the efficiencies and economies of participating in concerted group litigation. *See Hoffman-LaRoche*, 493 U.S. at 170, 172; *Campbell*, 903 F.3d at 1116.

Under *Campbell,* serious questions exist as to whether the Court should have granted plaintiffs' motion for conditional FLSA collective certification. An interlocutory appeal would save this Court and the parties the burden of fully litigating this case only to have to do so again, after a Ninth Circuit appeal, on behalf of a larger collective group. BofA offers no persuasive reason not to certify this case for interlocutory appeal. Plaintiffs' motion should be granted.

## ARGUMENT

### I. *Campbell*'s Application to a First-Step Conditional FLSA Certification Ruling Gives Rise Several Controlling Questions of Law.

*Campbell* has transformed the landscape for FLSA certification in the district courts. *See* Mot. at 13-15. Before *Campbell*, this Court and others often commented on the lack of Ninth Circuit guidance for applying the FLSA's "similarly situated" standard to putative collective actions. *Campbell* has now provided that much-needed guidance, holding that employees are "similarly situated" if "they share a similar issue of law or fact material to the disposition of their FLSA claim." 903 F.3d at 1117.

The only district court order applying *Campbell* that plaintiffs are aware of recognizes that the Ninth Circuit's opinion "changed the face of FLSA certification" because it "requires a much lower showing than the two-step approach district courts previously employed." *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825 at *5-6 (N.D. Cal. Dec. 21, 2018). Although *Campanelli* did not address the Bank's questions about how *Campbell* should be applied to a *first-step* FLSA inquiry, as here (rather than at the summary judgment or second-step inquiry, as in *Campbell*), Judge Hamilton's order in *Campanelli* illustrates the enormous impact that the Ninth Circuit's

*Campbell* decision will have on district courts' efforts to determine what it means to be "similarly situated" for purposes of Section 216(b) of the FLSA.

The Bank's efforts to distinguish *Campbell* here, and to restrict it to the narrow factual and procedural context in which it arose, underscores why plaintiffs are correct that the Order raises "controlling question[s] of law as to which there is substantial ground for difference of opinion." For example, the Bank disputes whether *Campbell* even applies to first-step decisions, or if it does, whether *Campbell* changes the kind or amount of evidentiary support needed to provisionally certify an FLSA collection action at the first step. Focusing on the facts of the present case, the Bank also flags the dispute over "what kind of evidence might demonstrate a common policy regarding exempt status" for purposes of that first-step determination. *See* Dkt. 53 ("Opp.") at 8-9.

Plaintiffs agree that each of these are controlling questions as to which there is substantial ground for a difference of opinion – although the Bank has not explained why the statutory term "similarly situated" should mean anything different under FLSA first-step analysis than the Ninth Circuit has construed it to mean under the second step (which is supposed to be the more difficult step to satisfy, *see Campbell*, 903 F.3d at 1109). These questions should be resolved promptly on appeal so this Court and other district courts throughout the Ninth Circuit may benefit from the Court of Appeals' further elucidation of the controlling principles under Section 216(b).

This Court need not answer any these questions now, though. At this stage, the only questions are whether the Order raises one or more controlling legal questions as to which reasonable jurists might differ, and whether prompt interlocutory review could materially advance the resolution of this litigation.

In cases like this, where new authority substantially modifies the standards previously used to analyze a particular issue, interlocutory review is often appropriate to determine how that new authority should be applied. For example,

the Seventh Circuit accepted an interlocutory appeal from an order denying a motion to dismiss a complaint shortly after the Supreme Court decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627 (7th Cir. 2010). As the court explained, "an appeal seeking a clarifying decision that might head off protracted litigation is within the scope of" Section 1292(b). *Id.* Similarly, the Northern District of California identified a controlling question of law in its order denying Wal-Mart's motion to dismiss or strike allegations on commonality grounds (while denying Section 1292(b) certification for separate reasons) where the Supreme Court's opinion in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), had "unsettled the standard for Rule 23 commonality." *See Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536 at *3 (N.D. Cal. Dec. 10, 2012). Much as the courts in *Text Messaging* and *Dukes* found that dramatic changes in the governing case authorities gave rise to "controlling questions of law," so does *Campbell* create a similarly dramatic change in how courts should evaluate whether to certify FLSA collective actions.

   The Bank's other arguments as why the application of *Campbell* cannot be a controlling question are similarly meritless. Even if the Bank were correct that no court has yet addressed how to apply *Campbell* to a first-step conditional certification decision, interlocutory review is particularly appropriate where, as BofA acknowledges, "'novel and difficult issues of first impression are presented.'" Opp. at 10, quoting *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *see also* Mot. at 12, citing *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (approving interlocutory review to resolve "novel legal issues … on which fair-minded jurists might reach contradictory conclusions … without first awaiting development of contradictory precedent"). The Bank is also wrong in asserting that issues involving the application of law to facts are never appropriate for interlocutory review. *See Steering Comm. v. United States*, 6

F.3d 572, 575-76 (9th Cir. 1993) (determination of mass tort defendant's liability could be reviewed under Section 1292(b) even though it was a mixed question of law and fact); *see also* Mot. at 11-12; *Text Messaging*, 630 F.3d at 625-27; *Dukes*, 2012 WL 6115536 at *2-3. Besides, plaintiffs' argument is not that the Court misapplied the facts under the proper standard, but that the Court used the wrong legal standard and would have reached a different result had the facts been analyzed under the correct *Campbell* standard instead.

Nor is there any basis to deny interlocutory review on the ground that the Court's denial of collective certification is merely a "discretionary" decision. First, *Campbell* explains that the decision whether to certify a FLSA collective action is *not* discretionary. To the contrary, "the FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements." *Campbell*, 903 F.3d at 1115; *see also id.* at 1112 ("Whereas [Fed. R. Civ. P.] 20 and 42 allow district courts discretion in granting joinder or consolidation, the FLSA, which declares a right to proceed collectively on satisfaction of certain conditions, does not."). Thus, pre-*Campbell* or out-of-circuit decisions that declined to certify FLSA conditional certification rulings for interlocutory review on the ground those decisions are discretionary (Opp. at 5) no longer have any precedential or persuasive effect.

Second, even if the court's denial of conditional certification were discretionary, that would not immunize it from Section 1292(b) review. *See, e.g.*, *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 598 (9th Cir. 1964) (reviewing discretionary stay order under Section 1292(b)). In any event, a district court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).[1]

---

[1] Pre-*Campbell* and out-of-circuit district court orders declining to certify FLSA collective certification orders for interlocutory appeal (Opp. at 5-6) are of little

The Bank's waiver argument also fails. The Bank argues that plaintiffs waived the right to rely on *Campbell* on appeal because plaintiffs did not cite it in their briefs in support of provisional certification. Opp. at 6-7. But of course, failure to cite a controlling case does not constitute waiver of an underlying issue or argument, and plaintiffs repeatedly argued in their provisional certification briefs that the Bank's financial-center-based lending officers were similarly situated to one or more plaintiffs for purposes of first-step provisional certification under Section 16(b) of the FLSA. *See, e.g.,* Dkt. 37 at p.17-24; Dkt. 43 at p.4-5, 8. Thus, even if plaintiffs (and defendants, and the Court) overlooked the controlling authority, *Campbell* is now the law, and the principles it establishes will govern this case on appeal. *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 908 (9th Cir. 2004) (reviewing ruling "in light of all relevant authority, regardless of whether such authority was properly presented in the district court.") (citations omitted).[2]

---

persuasive value to this Court, which is bound by *Campbell* and its definitive interpretation of the FLSA for this Circuit, and must consider that new authority in determining the propriety of Section 1292(b) certification. Likewise, out-of-circuit decisions holding that FLSA conditional certification orders are not appealable pursuant to the collateral order rule, *see Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544 (6th Cir. 2006), and *Baldridge v. SBC Comms., Inc.*, 404 F.3d 930 (5th Cir. 2005), are irrelevant to this Court's Section 1292(b) analysis.

[2] The Bank's suggestion that plaintiffs' Section 1292(b) motion may be untimely is baseless. Opp. at 2 n.1. Section 1292(b) states no deadline by which a district court motion for certification must be filed. Plaintiffs filed this motion on December 26, 2018, just 29 days after the Court's November 27 Order. BofA has identified no authorities finding that a Section 1292(b) motion filed within 30 days after the challenged order was untimely, nor has it suggested any resulting prejudice.

## II. Whether the Court May Weigh Conflicting Evidence at the First Step of the Conditional Certification Analysis Is Also a Controlling Question of Law.

Plaintiffs also identified, as a controlling question of law, whether this Court erred by weighing conflicting evidence in its first-step collective certification analysis. Mot. at 17-19, 22-23 & n.6; *see* Dkt. 46 at p.9 (relying on Howard Decl., Dkt. 41 at 15 (deposition corrections)). As plaintiffs demonstrated, *Campbell* precludes a court from weighing conflicting evidence at the second step of the collective certification analysis, requiring the court to apply a summary judgment standard instead. *See* Mot. at 23; *Campbell*, 903 F.3d at 1119. If a district court may not weigh conflicting evidence at the more stringent second step of the collective certification analysis, surely it may not do so at the more "lenient" first step (as other courts had earlier concluded, *see* Mot. at 23 n.6). At the very least, whether and to what extent *Campbell* prohibits the weighing of conflicting evidence at the first step of the analysis presents another, separate, controlling legal question as to which reasonable jurists could disagree. *Compare* Mot. at 23 n.6 & cases cited *with*, *e.g.*, *Wynn v. NBC*, 234 F.Supp.2d 1067, 1082 (C.D. Cal. 2002) (pre-*Campbell* decision finding that a plaintiff's evidence at the first step must "successfully engage with defendants' affidavits to the contrary").

The Bank tries to reframe plaintiffs' position as a fact-bound disagreement with *how* this Court weighed the evidence. Opp. at 10-11. However, plaintiffs made clear in their motion that one of the controlling questions was whether a district court can weigh the evidence at all (whether or not that weighing encompasses "sham" deposition testimony changes, *see infra* at 10-12), not merely whether the court struck the wrong balance. *See* Mot. at 23 ("While the Court's approach appears to be impermissible under *Campbell* for the reasons stated above, it is also improper – and raises a material controlling issue under Section 1292(b) – *because it prematurely weighed conflicting evidence and witness credibility* and gave undue credence to what appear to be 'sham' deposition corrections") (emphasis added).

Similarly, whether this Court had the authority to credit the substantive post-deposition corrections that materially changed the original party admissions made by the Bank's Rule 30(b)(6) witness Vijay Lala (Mot. at 23-25) is not a dispute about how this Court weighed the evidence, but about whether a district court can weigh conflicting evidence at this stage of the litigation *at all* and, if it can, what types of evidence can be considered.

Plaintiffs have shown why the question of whether the Court could rely on the post-deposition changes to Lala's testimony was a controlling question of law as to which there was substantial ground for difference of opinion. Mot. at 19-25. Lala testified repeatedly at his Rule 30(b)(6) deposition that the Bank's financial center-based lending officers spent more than half their time working in their offices, not conducting outside sales. *See id*. at 21-22. In all but one of these instances, BofA changed Lala's testimony after the deposition, from a forthright admission that those lending officers were expected to (and did) perform their work primarily in the office, to equivocal statements that differences among employees' individual service agreements would preclude class or collective treatment of their wage-and-hour claims. For example:

| **Original Testimony** | **Changes** |
|---|---|
| 1. Q. And before November 2016, the Lending Officers who worked in financial centers spent over 50 percent of their time there. Fair?<br>A. They're supposed to. Dkt. 36-5, p.49 of 125 (21:19-22). | Answer changed to: "The amount of time they spent at the financial center would depend on their service level agreement. Before 2016, Lending Officers could have a service level agreement to cover a financial center for less than 50 percent of their time." Dkt. 41, p.15 of 246. |
| 2. Q. And as far you know, they did [spend over 50% of their time in financial centers prior to November 2016]; correct?<br>A. As far as I know. Dkt. 36-5, | Answer changed to: "As far as I know, they spent time at the financial center consistent with their service level agreement." Dkt. 41, p.15 of 246. |

11
Plaintiffs' Reply in Support of Motion To Certify Interlocutory Appeal   Case No.  2:17-cv-06104-MWF-JC

p.49 of 125 (21:23-24).

| | |
|---|---|
| 3. Q. Meaning "yes"?<br>A. Yes. Dkt. 36-5, pp.49-50 of<br>125 (21:25 – 22:1). | Answer changed to: "As far as I know, they spent time at the financial center consistent with their service level agreement." Dkt. 41, p.15 of 246. |

*See also* Mot. at 21-22.  In each such instance, BofA stated that the reason for the change was "clarifying testimony."  Dkt. 41 at 15-17.

As demonstrated in the Motion at 23-25, a deponent may make only "corrective, and not contradictory" post-deposition changes to deposition testimony.  *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1226 (9th Cir. 2005).  The Bank contends that the Court properly read Lala's deposition testimony as a whole, and the post-deposition changes to the testimony were "consistent" with his other testimony.  That isn't true.  The only way Lala's *changed* deposition testimony could be consistent with his testimony as a whole is *if his original, uncorrected testimony never existed* (and even then, the changed testimony could not be reconciled with Lala's sworn, unchanged, statement that financial center lending officers spent "the majority" of their time working in their assigned bank branches, Dkt. 36-5, pp. 56-57 (38:19-39:1)).

The principle that a witness' testimony may be considered as a whole usually means that a trier of fact may consider questions that are asked several times in different ways and clarified by the deponent, in real time, "under the scrutiny of examination." *Ashcraft v. Welk Resort Group*, 2017 WL 5180421 at *5 (D. Nev. Nov. 8, 2017) (citations omitted).  It does not mean that the deposition becomes a "take home examination," where the deponent "may merely answer the questions with no thought at all then return home and plan artful responses." *Hambleton Bros.*, 397 F.3d at 1225 (citation omitted).  Moreover, even legitimate deposition corrections do not "replace" the original deposition testimony.  *Updike v. Clackamas County*, 2016 WL 680536 at *2 (D. Or. Feb. 19, 2016); *see also*

*Ashcraft*, 2017 WL 5180421 at *8 ("the starting line must remain the testimony actually provided under oath").

Thus, even if changes to deposition testimony are not rejected as a "sham," the opposing party remains free to use the deponent's original testimony and post-deposition changes to impeach the deponent's credibility; and the fact-finder may still choose not to credit the post-deposition changes. By crediting *only* the Bank's post-deposition changes to Lala's testimony, when those changes contradicted his prior real-time sworn deposition testimony, the Court usurped the trier of fact's ultimate function and based its denial of provisional certification on improper considerations – or at least created enough of a controlling question as to warrant certification under Section 1292(b). After all, Lala's *original* testimony – as shown by the excerpts above and those quoted in the Motion – showed those employees did, and indeed were *supposed to*, spend more than 50% of their time in the office. Lala also confirmed in the unchanged portion of his deposition testimony that those employees spent "the majority" of their time working in the office (Dkt. 36-5, pp. 56-57 (38:19-39:1)). The post-deposition corrections on which BofA and the Court relied conflict with *all* of this testimony.[3]

---

[3] The Bank's claim that its post-deposition changes to Lala's testimony were consistent with employee declarations in an unrelated case is incorrect, and also immaterial to whether the Court erred by relying on those post-deposition changes to the exclusion of all other evidence (including but not limited to Lala's original testimony). Even if some evidence did corroborate the post-deposition changes, the existence of such evidence would not validate changes that contradict a deponent's testimony. *Ashcraft*, 2017 WL 5180421 at *8. Moreover, the declarations on which the Bank relies do not clearly corroborate its post-deposition changes to Lala's testimony. Those declarations do not identify whether the lending officer declarants were employed at financial centers or home loan centers and do not address whether they spent the majority of their time inside or outside BofA's offices (Dkt. 41 at pp.147-180, Exhs. G-O), and are therefore immaterial to the question whether financial center lending officers spent a majority of their time working in the office.

Under *Campbell*, it was improper for the Court to credit the Bank's substantive changes to its designee's deposition testimony while giving no weight to his original testimony (and little or no weight to the other evidence presented by plaintiffs). Even if *Campbell* had not prohibited weighing conflicting evidence in evaluating whether other employees are "similarly situated," moreover, the Court's November 27 Order would still raise the controlling legal question of what constitutes "sham" corrections. *See* Mot. at 23-25.

The Bank responds that the "sham" corrections doctrine only applies in the summary judgment context, but that is not so. For example, in *Ashcraft* (as here), the defendant tried to avoid class certification by changing its Rule 30(b)(6) designee's testimony about its "across-the-board practices to testimony about what [the defendant] does 'in some circumstances.'" 2017 WL 5180421 at *7 & n.7. The district court struck those changes, finding they were "of a highly substantive nature and directly contradict[ed] the sworn testimony that was actually provided." *Id.* at *7. Even if the Bank were right that the "sham" corrections doctrine should generally be limited to the summary judgment context, certainly the Ninth Circuit could conclude that the doctrine also applies to the FLSA certification context, given its holding in *Campbell* that the governing legal standard is effectively the same as the Rule 56 summary judgment standard. *Campbell*, 903 F.3d at 1119.

Again, plaintiffs are not asking the Court to find that its previous analysis was erroneous, only that its approach to weighing the Bank's post-deposition changes to its Rule 30(b)(6) deponent's testimony raises another controlling legal question – how conflicting evidence should be evaluated at a first-step FLSA collective certification – as to which there is ample ground for disagreement. Nothing in BofA's arguments undermines plaintiffs' showing that interlocutory appeal is appropriate with respect to this question as well.

14
Plaintiffs' Reply in Support of Motion To Certify Interlocutory Appeal   Case No. 2:17-cv-06104-MWF-JC

### III. Interlocutory Review Would Materially Advance the Ultimate Resolution of This Case.

Finally, interlocutory review would not only provide much-needed guidance to the district courts regarding how to apply *Campbell*, but it would also materially advance the resolution of this litigation. As discussed above, the Ninth Circuit would apply the controlling legal authorities, including *Campbell*, upon an appeal from final judgment. *Ballaris*, 370 F.3d at 908. Given the likelihood that this Court's denial of collective certification will eventually be reversed in light in of *Campbell*, permitting interlocutory review of the Court's November 27 Order stands to save this Court and the parties the time, burden, and expenditure of resources necessary to fully litigate this case on behalf of the existing three plaintiffs before returning on remand to litigate the case again on behalf of a broader FLSA collective. Mot. at 25-29.

The Bank does not seriously dispute this. Instead, its principal argument is that even if this Court's November 27 Order conflicts with *Campbell* and would eventually be reversed by the Ninth Circuit, nothing prevents other financial center lending officers from filing their own FLSA lawsuits. Opp. at 13-14. The Bank might well prefer that its financial center lending officers do not receive notice of this action any time soon (as the FLSA statute of limitations continues to run on their claims), but that preference conflicts with the purposes of the FLSA collective action mechanism.

As plaintiffs explained in their Motion at 27, by authorizing similarly situated workers to engage in collective FLSA litigation, Congress intended to allow workers to "vindicate [their] rights by the pooling of resources," and to foster the "efficient resolution" of common issues of law and fact. *Hoffman-LaRoche*, 493 U.S. at 170. The collective mechanism benefits the court system as well by avoiding a multiplicity of actions. *Id*. Those benefits necessarily "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to

15

Plaintiffs' Reply in Support of Motion To Certify Interlocutory Appeal   Case No. 2:17-cv-06104-MWF-JC

1  participate." *Id.* Those benefits would be lost completely unless this Court
2  certifies its November 27 Order for interlocutory review.

## CONCLUSION

For the foregoing reasons, and those stated in plaintiffs' opening brief, this Court should certify its November 27 Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b).

DATED: January 14, 2019  **THIERMAN BUCK LLP**
By:  /s/ Mark R. Thierman
     Mark R. Thierman
     Joshua D. Buck
     Leah L. Jones
     Attorneys for Plaintiff Joshua Boswell

DATED: January 14, 2019  **HAFFNER LAW PC**
By: /s/ Joshua H. Haffner
    Joshua H. Haffner
    Attorneys for Plaintiffs Jose
    Fernandez and Alex Yong

DATED: January 14, 2019  **STEVENS, L.C.**
By:  /s/ Paul D. Stevens
     Paul D. Stevens
     Attorneys for Plaintiffs Jose
     Fernandez and Alex Yong