APALLA U. CHOPRA (S.B. #163207)
achopra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
SUSANNAH K. HOWARD (S.B. #291326)
showard@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California, 94111-3823
Telephone: (415) 984-8912
Facsimile: (415) 984-8701

Attorneys for Defendants
Bank of America, N.A. and
Bank of America Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FERNANDEZ et al., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A, et al. <br><br> Defendants. | Case No. 2:17-cv-06104-MWF-JC <br><br> **DEFENDANTS BANK OF AMERICA CORPORATION AND BANK OF AMERICA, N.A.'S RESPONSE TO ORDER TO SHOW CAUSE** <br><br> Date: February 15, 2019 <br> Time: <br> Courtroom: 5A <br> Before: Hon. Michael W. Fitzgerald |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 3

    I.    *CAMPBELL* DOES NOT SUPPORT REVERSAL OF THIS COURT'S ORDER DENYING CONDITIONAL CERTIFICATION ................................................................................ 3

    II.   THE BANK HAS ENTERED INTO A SETTLEMENT AGREEMENT THAT COVERS THE OVERTIME CLAIMS OF THE VAST MAJORITY OF PUTATIVE COLLECTIVE MEMBERS ........................................................................................ 7

CONCLUSION .......................................................................................................... 8

## INTRODUCTION

Defendants Bank of America, N.A. and Bank of America Corporation (referred to collectively as "Bank of America" or the "Bank") submit this brief in response to the Court's February 1, 2019, order to show cause why conditional certification under the Fair Labor Standards Act ("FLSA") of Plaintiffs' overtime claim should not be granted in light of *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018). For the reasons stated below, *Campbell* does not warrant any change to the Court's November 27, 2018 order (Dkt. 46) (the "Order") denying conditional certification.

*Campbell* involved a different procedural posture and materially different facts. Specifically, *Campbell* upheld a decision decertifying collective treatment of the overtime claims of non-exempt Police Officers. The theory underlying these claims was that the defendant had a policy of denying payment to the plaintiffs for small amounts of overtime. Because the plaintiffs failed to show a common policy of denying such payments, their overtime claims could not be resolved on a collective basis. *Id.* at 1120. The Ninth Circuit did not address whether conditional certification had been properly granted in *Campbell* because that issue was never in dispute. Indeed, the parties in *Campbell* **stipulated** to conditional certification before the district court.

In discussing decertification, the Ninth Circuit discussed the factors district courts could properly take into account when assessing whether collective action members are "similarly situated" for purposes of section 216(b) of the FLSA. 29 U.S.C. § 216(b). To the extent the Ninth Circuit's "similarly situated" analysis should be applied at the conditional certification stage, the analysis **supports** this Court's Order denying conditional certification. The Ninth Circuit stressed that to be "similarly situated" means to be "alike with regard to some ***material*** aspect of their litigation." *Campbell*, 903 F.3d at 1114. A "material aspect" means "a legal or factual similarity … having the potential to advance these claims, collectively, to

some resolution." *Id.* at 1115.  The Court also explained that rarely would other considerations, such as procedural issues or considerations of fairness, justify decertifying a collective action. *Id*. at 1114-17.

The Ninth Circuit upheld the district court's Order decertifying the collective action because the plaintiffs failed to present evidence of a common policy to deny overtime payments—i.e., they failed to establish that they were "similarly situated" with regard to a material aspect of their litigation. *Id*. at 1120-21.  In the absence of such a policy, the party-plaintiffs' claims could not be resolved on a collective basis.  Plaintiffs here have similarly failed to identify a mechanism capable of resolving, on a collective basis, the FLSA overtime claim asserted in this case.[1]  In contrast to *Campbell*, where it was undisputed that the plaintiffs were non-exempt and the only question was whether they had been paid in full for all overtime hours worked, the crux of this case is whether Plaintiffs and other Lending Officers ("LOs") were properly classified as exempt.  If they were properly treated as exempt, they are not entitled to overtime—regardless of how many hours they worked.  Plaintiffs offered no evidence establishing that the exempt status of LOs could be determined on a collective, rather than on an individual, basis, such as a common policy regarding how LOs were expected to spend their time.  Rather, they pointed to the common incentive pay plan—which, as this Court correctly noted, has no bearing on the propriety of their exempt status. (Dkt. 46 at 23.)  By contrast, the Bank showed that in order to determine whether LOs were properly classified, the Court would have to engage in individualized inquiries regarding, *inter alia*, the nature of each LO's duties, how much time LOs spent working in and out of Financial Centers, whether the various duties LOs engaged in were exempt or non-exempt, and the like.  This Court's Order is therefore consistent with *Campbell* in

---

[1] As noted in the Bank's Opposition to Plaintiffs' Motion to Certify an Interlocutory Appeal Under 28 U.S.C. § 1292(b) (Dkt. 53 at n.2), only Plaintiff Boswell has a timely FLSA claim.  To the extent Plaintiffs Fernandez and Yong purport to assert claims under the FLSA, those claims are time-barred. (*Id*.)

that the analysis focused on whether Plaintiffs and other LOs were "similarly situated" in a ***material*** way. Because they are not, this Court properly denied conditional certification.

Separate and apart from the fact that *Campbell* does not support a reversal of this Court's Order denying conditional certification, a reversal of the Order would have little effect in any event. This is because the vast majority of LOs who would be eligible to participate in any certified collective are covered by a currently pending class and collective action settlement that disposes of the FLSA overtime claims for all but a small fraction of the putative collective.

## ARGUMENT

### I. *CAMPBELL* DOES NOT SUPPORT REVERSAL OF THIS COURT'S ORDER DENYING CONDITIONAL CERTIFICATION

In the Order to Show Cause, this Court stated: "Arguably, the alleged practice of Bank of America is similar enough to the alleged LAPD practice in *Campbell* that conditional certification is appropriate." To the extent this statement suggests that the Ninth Circuit found conditional certification to be appropriate in *Campbell*, that is incorrect. *Campbell* upheld a decision decertifying a collective action where the parties had ***stipulated*** to conditional certification before the district court. *Campbell*, 903 F.3d at 1103; *see also id*. at 1117 ("Because preliminary certification is not challenged in this case, we address ***only*** the standard the district court should apply to post-discovery ***decertification***.") (emphasis added). The propriety of conditional certification simply was not before the Court in *Campbell*.

With respect to the Court's second stage, decertification analysis of whether the party-plaintiffs in *Campbell* were "similarly situated," that discussion supports this Court's denial of conditional certification here. Importantly, *Campbell* makes clear that, in determining whether individuals are "similarly situated," not just any similarity will do. Citing to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the court explained that "what matters is not just ***any*** similarity between party

plaintiffs, but a legal or factual similarity material to the resolution of the party-plaintiffs' claims, in the sense of having the potential to advance those claims, collectively, to some resolution." *Campbell*, 903 F.3d at 1115. The plaintiffs in *Campbell* alleged that the LAPD had a policy of refusing to pay employees who were indisputably exempt for small amounts of overtime. Based on these allegations, the Ninth Circuit reasoned that, to justify collective treatment of their overtime claims, the plaintiffs had to present evidence of a common policy not to pay for small amounts of overtime. Had such a policy existed, "[t]he Officers would have been alike in a way material to their litigation, as proving (or failing to prove) the existence of such a Department policy would have affected the ultimate findings regarding the occurrence of unpaid overtime and the City's knowledge of it." *Id*. at 1116. The evidence, however, did not support the conclusion that there was such a policy; rather, at best, the evidence showed "variable practices variably applied." *Id*. at 1120. As the Ninth Circuit found, "there [was] no evidence to suggest that the declarants' vaguely reported experiences are in fact representative of the experiences of the party plaintiffs Department-wide; the only evidence in the record is that they are not." *Id*. In light of this evidence, the district court properly decertified the collective. *Id*. at 1121.

Where the Ninth Circuit parted ways with the district court was in the district court's consideration of factors **other** than whether there was evidence of a common policy that could resolve the plaintiffs' claims collectively. *Id*. at 1114-17. The district court took these other considerations into account when applying what is known as the "ad hoc test"—the test recognized as the majority approach to the similarly situated analysis. *Id*. at 1113-14. The problem with the ad hoc test, the Ninth Circuit explained, is that it "led the district court into an approach that treats difference as disqualifying, rather than one that treats the **requisite** kind of similarity as the basis for allowing partially distinct cases to proceed together." *Id*. at 1117 (emphasis added). For example, "the district court emphasized that

Officers work on different tasks, in different divisions, and under different supervisors." *Id*. at 1116. However, "[t]hose distinctions would not have mattered to the determination of liability if it were proven, as claimed, that the Department had an overall policy against submitting small overtime claims." *Id*. Despite the district court's reliance on the wrong legal test, the Ninth Circuit nevertheless affirmed the district court's decision because the plaintiffs failed to establish that there was a "Department-wide policy discouraging the reporting of overtime"—the issue that mattered for purposes of collective treatment.

Plaintiffs likewise cannot point to a material similarity between themselves and other LOs capable of advancing a collective resolution of the FLSA overtime claim. As this Court correctly concluded, the "crux" of this case is whether the Bank misclassified LOs as exempt. (Dkt. 46 at 23.) Determining exempt status necessarily involves "an individualized analysis of the way each employee actually spends his or her time," *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 945 (9th Cir. 2009), and a "blanket application of exempt status ... does nothing to facilitate common proof on the otherwise individualized issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). In other words, unlike in *Campbell*, where the exempt status of the plaintiffs was not in dispute and variation in job duties or tasks did not matter, here, how LOs perform their work and the time they spend on various tasks is ***the*** central issue. Plaintiffs did not point to any common evidence regarding how LOs spend their time. Although Plaintiffs relied on the incentive plan applicable to all LOs, as this Court correctly noted, the incentive plan does nothing to advance the inquiry into whether all LOs were misclassified as exempt. (Dkt. 46 at 23.) By contrast, the Bank presented evidence establishing that LOs carry out their job duties differently and that there is no policy imposing requirements on how LOs spend their time.[2] In

---

[2] This evidence included the Bank's 30(b)(6) testimony that LOs spent varying amounts of time at Financial Centers, that the Bank had no specific time limit regarding the amount of time LOs were expected to be at Financial Centers;

addition, the Bank relied on multiple exemptions vis-à-vis LOs, including the outside sales exemption, the administrative exemption, and the highly compensated employee exemption. (*See* Dkt. 40 at 13-15 (outlining exemptions).) Each of these exemptions has its own requirements regarding the duties that qualify as exempt and the quantity of time an employee must spend on exempt duties in order to qualify for the exemption. Accordingly, to determine the exempt status of each putative collective member, this Court would have to engage in myriad individual inquiries into how each LO spent their time and whether each particular duty qualified as exempt work. In light of the need for such inquiries, this Court correctly denied conditional certification. (Dkt. 46 at 26.) This conclusion is entirely consistent with *Campbell*'s holding that plaintiffs cannot simply point to ***any*** similarity but must identify "a legal or factual similarity material to the resolution of the [their] claims." *Campbell*, 903 F.3d at 1115.[3]

To the extent Plaintiffs argue that, in light of *Campbell*, a more lenient standard should be applied at the conditional certification stage than was applied by this Court, they would be wrong. This Court applied "the lenient standard of the first stage" (Dkt. 46 at 23), noting that "[t]he factual showing required of plaintiffs at this stage is generally described as 'modest.'" (*Id.* at 21 (citations omitted).)

---

numerous sworn declarations from LOs that they spent considerable time away from the office engaged in sales activities; and deposition testimony from the named plaintiff in *McLeod*—a class action asserting claims under Labor Code Section 2802 on behalf of LOs—that she worked out of a Financial Center only two or three days per week, and for only between four to six hours at a time.

[3] For this reason, courts have repeatedly held that misclassification claims are not appropriate for collective treatment where the plaintiffs fail to put forth evidence of sufficiently similar job duties. *See Pfohl v. Farmers Ins. Grp.*, 2004 WL 554834, at *9 (C.D. Cal. Mar. 1, 2004) ("The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case."); *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) (where the central issue is exempt status, "the 'similarly situated' inquiry must be analyzed in terms of the nature of each putative plaintiff's job duties"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1272 (M.D. Ala. 2004) (same); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (same).

Nothing in *Campbell* changes the standard applied at the first stage. As noted above, *Campbell* did not consider the first stage and simply noted in passing that at this stage, "the level of consideration is 'lenient[,]' … commensurate with the stage of the proceedings." *Campbell*, 903 F.3d at 1109. The standard applied by this Court is consistent with these comments. Nor can Plaintiffs point to any considerations by this Court that were deemed improper under *Campbell*. While this Court took into account variations in job duties, those variations are **material** to Plaintiffs' claims and were therefore properly taken into account. *See id*. at 1120 (considering differences with respect to overtime reporting and payment in concluding that the party-plaintiffs were not similarly situated). Moreover, even if this Court had taken such considerations into account, this Court's denial of conditional certification would nevertheless be justified based on Plaintiffs' failure to point to a material similarity among LOs. *Id*.

## II. THE BANK HAS ENTERED INTO A SETTLEMENT AGREEMENT THAT COVERS THE OVERTIME CLAIMS OF THE VAST MAJORITY OF PUTATIVE COLLECTIVE MEMBERS

Finally, even if this Court were to reverse the Order and grant conditional certification, such a ruling would have only limited effect because the Bank has entered into a class and collective action settlement in a different case that covers the FLSA overtime claims of the vast majority of LOs who would be eligible to participate as members of any collective action in this case. (KohSweeney Decl. ¶ 2, Ex. B.) The plaintiffs in that case filed a motion for preliminary approval of the settlement on January 23, 2019, in the Supreme Court of New York, County of Suffolk. (*Id*. at ¶ 2, Ex. A.) If the settlement is approved by the court, all participants will release "any and all wage and hour actions, causes of action, suits, liabilities, claims, and demands, whatsoever," including claims under the FLSA.[4]

---

[4] Bank of America has submitted the motion for preliminary approval, as well as the Settlement Stipulation as exhibits to the Declaration of Adam P. KohSweeney. If the Court would like to see the additional documents filed with the plaintiffs'

1  (*Id.* Ex. B at Section IV.)

2  The settlement covers current and former Bank of America LOs with job codes SM009, SM172, SM611, SM614, SM171, SM612, SM603, SM604, SM605, and SM610. (*Id.* at Section I.A & B.) The only LOs who are not covered by the settlement are those employed in job code SM610 in California. (*Id.* at Section I.B.) This group only includes approximately 100 individuals. Plaintiffs have not made any argument specific to this small group of individuals. With the exception of this small group, and any individuals who may opt out of the settlement, the overwhelming majority of LOs will release their FLSA claims as a result of this settlement and will therefore be ineligible to participate in this case, should a collective action be conditionally certified. Although for the reasons stated above, *Campbell* does not warrant a reversal of this Court's prior Order, in light of this settlement, to the extent this Court believes reversal is appropriate, this Court should postpone any decision while approval of the settlement is pending. It would be inefficient and potentially confusing to LOs to receive two separate notices, regarding two separate cases, one of which has already settled.

## CONCLUSION

For the foregoing reasons, this Court correctly denied Plaintiffs' motion for conditional certification. There is no basis to reverse this Court's Order.

Dated: February 15, 2019            O'MELVENY & MYERS LLP

                                    By:   /s/ Adam P. KohSweeney
                                          Adam P. KohSweeney

                                    Attorneys for Defendants Bank of America, N.A. and Bank of America Corporation

---

motion for preliminary approval or any other documents in the case, Bank of America is happy to provide these documents.

8

DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE
2:17-CV-06104-MWF-JC