Joshua H. Haffner, Cal. Bar No. 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, Cal. Bar No. 303056
(gl@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa St., Suite 2325
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Paul Stevens, Cal. Bar No. 207107
(pstevens@stevenslc.com)
**STEVENS, LC**
700 S. Flower Street, Suite 660
Los Angeles, California 90017
Telephone: (213) 270-1211
Facsimile: (213) 270-1223

Attorneys for Plaintiffs JOSE
FERNANDEZ, ET. AL.

Mark R. Thierman, Cal. Bar No. 72913
(mark@thiermanbuck.com)
Joshua D. Buck, Cal. Bar No. 258325
(josh@thiermanbuck.com)
Leah L. Jones, Cal. Bar No. 276448
leah@thiermanbuck.com
**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV  89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Attorneys for Plaintiffs JOSHUA B.
BOSWELL, ET. AL.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE FERNANDEZ, ET AL,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendant. | **Case No.  2:17-cv-06104-MWF-JC**<br>(consolidated with Case No.: 2:17-cv-06120-GW-RAO)<br><br>**PLAINTIFFS' REPLY IN RESPONSE TO FEBRUARY 1, 2019 ORDER [DKT. 57]** |
| JOSHUA B. BOSWELL, ET. AL.,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, ET. AL.;<br><br>Defendant. | (Assigned to Hon. Michael W. Fitzgerald) |

# INTRODUCTION

This Court ordered Defendant Bank of America ("BofA" or "Bank") to show cause why plaintiffs' motion for FLSA conditional certification should not be granted under *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), after considering plaintiffs' motion to certify the Court's November 27, 2018 Order denying FLSA conditional certification under 28 U.S.C. §1292(b).  Dkt. 57 at 1.  The Bank's response to the OSC, which mostly repeats the arguments it asserted before, contends that *Campbell* is irrelevant because the Ninth Circuit's analysis applies only at the second stage of FLSA certification, not the first stage, as here.  That argument is no more persuasive now than before, and this Court should now grant conditional certification and order FLSA notice to be distributed to the Bank's financial center lending officers nationwide under 29 U.S.C. §216(b).

*Campbell* held that employees are "similarly situated" under the FLSA if "they share a similar issue of law or fact material to the disposition of their FLSA claim."  903 F.3d at 1117.  Under that holding, a court should permit a collective action to proceed even when it is possible that some individualized issues may come to light as the litigation moves forward.  The Bank is simply wrong in its assertion that the potential for any individualized issues to eventually arise dooms a FLSA collective action from the outset.

The real reason for the Bank's continued opposition to FLSA collective certification here, even after *Campbell*, was revealed by the Bank's February 15, 2019 response to the Court's OSC, Dkt. 58.  For the first time, the Bank has now disclosed that even as it was aggressively opposing class and FLSA collective certification in this case, it was negotiating with a group of New York lawyers to transform their New York state law putative class action into a nationwide FLSA collective action and multi-state state law class action and then to settle that case on terms favorable to the New York lawyers but unfavorable to the Bank lending officers whose FLSA and California law claims it sought to have released –

1  including the FLSA claims and most of the California law claims at issue in this

2  case.  Dkt. 58 at 7-8.

3        The FLSA and California law claims were added to the New York action on

4  January 23, 2019, without prior discovery into their merits, simply to settle and

5  release those claims.  *Until the Bank responded to this Court's OSC on February*

6  *15, 2019, BofA did nothing to notify this Court of that pending action, in plain*

7  *violation of Local Rule 83-1.4.1.*[1]  If the Bank has its way, its lending officers will

8  receive *no* FLSA notice from this Court, and will not receive an FLSA notice from

9  the New York court until after *final* settlement approval, many months from now,

10  because the proposed New York settlement is structured to delay any notice until

11  after the settlement is finalized when the Bank's lending officers will be mailed a

12  check – apparently a very small check – and told that by cashing the check they

13  release all state and federal claims.  Dkt. 58-1 at p. 22 of 70, ¶7.  Plaintiffs here

14  doubt the New York court will grant preliminary approval to that settlement, and

15  are seeking to intervene to make their objections known.  Whatever happens in

16  New York, though, this Court should follow *Campbell* and authorize the prompt

17  issuance of FLSA conditional certification notice.  Otherwise, the Bank's lending

18  officers will never know about the pendency of this case and their right to opt in

19  under Section 16(b) of the FLSA (because none of that information is included in

20  the proposed notice prepared by the parties in the sue-and-settle New York case).

21        The statute of limitations on each lending officer's FLSA claim continues to

22  run until that employee files an individual Consent-to-Sue form.  *See* 29 U.S.C.

23  §256.  Any further delay in sending notice will further prejudice those employees'

24

---

25        [1] Local Rule 83.-1.4.1 provides: "Whenever a civil action filed in or removed

26  to this Court involves all or a material part of the subject matter of an action then
   pending before the United States Court of Appeals, Bankruptcy Appellate Panel,

27  Bankruptcy Court or any other federal or state court or administrative agency, the
   attorney ***shall*** file a 'Notice of Pendency of Other Actions or Proceedings' with the

28  original complaint or petition filed in this Court.  The duty imposed by L.R. 83-1.4
   continues throughout the time an action is before this Court." (Emphasis added).

1  FLSA rights.  Moreover, the proposed New York settlement is structured to
2  prevent potential collective action participants from obtaining notice of their FLSA
3  rights until well after the class settlement is finally approved (if it is approved),
4  with no protection for wage claims that are lost every day by the employees who
5  do not accept the New York settlement terms.

6        Plaintiffs are confident that under the circumstances of this case, there are
7  compelling reasons for the courts to equitably toll the FLSA statutes of limitations
8  for Bank lending officers.  *See, e.g.*, *Beauperthuy v. 24 Hour Fitness USA, Inc.*,
9  2007 WL 707475 at *8 (N.D. Cal. Mar. 6, 2007).  But there is no guarantee,
10  meaning that any further delay threatens to substantially impair the interests of
11  potential collective action members, rewarding BofA for its double-dealing and
12  lack of candor with this Court.

13                                       **ARGUMENT**

14  **I.    A Collective Action Should Be Conditionally Certified Under *Campbell*.**

15        In its February 1, 2019 Order, this Court recognized that reconsideration of
16  its denial of FLSA conditional certification was appropriate in light of *Campbell*.
17  Dkt. 57 at 1.  Nothing in BofA's response undermines that conclusion.

18        Under the FLSA, employees who are "similarly situated" may pursue their
19  claims as a collective action.  29 U.S.C. §216(b).  *Campbell* gave the district courts
20  much-needed guidance concerning the meaning of the term "similarly situated,"
21  explaining that employees are "similarly situated" when they are "alike with regard
22  to some *material* aspect of their litigation."  903 F.3d at 1114 (emphasis in
23  original).  Where employees share such a similarity, collective treatment of their
24  claims "may be *to that extent* appropriate, as it may *to that extent* facilitate the
25  collective litigation" of their claims.  *Id.* at 1115 (emphasis in original); *see also id.*
26  at 1117 ("Party plaintiffs are similarly situated, and may proceed in a collective, to
27  the extent they share a similar issue of law or fact material to the disposition of
28  their FLSA claims.").

BofA urges this Court to ignore *Campbell* because it concerned a district court's order decertifying a collective action at the *second* step of the collective certification process, making the Ninth Circuit's analysis irrelevant at the *first* step of the process. This argument is plainly wrong. The crux of the Ninth Circuit's decision in *Campbell*, as Plaintiff previously explained, is that court's statutory construction of "similarly situated" in 29 U.S.C. §216(b). That statutory term cannot mean one thing at the first step of the collective certification process and something completely different at the second step. Not surprisingly, district courts have already recognized that *Campbell*'s construction of "similarly situated" applies equally to both steps of the collective certification process. *See Smothers v. NorthStar Alarm Servs., LLC*, 2019 WL 280294 at *2, 8 (E.D. Cal. Jan. 22, 2019) (considering settlement agreement entered into before the court ruled on first-step conditional certification motion); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825 at *6 (N.D. Cal. Dec. 21, 2018) ("If plaintiff makes a plausible showing" that *Campbell*'s "similarly situated" standard is satisfied at the first step, collective certification should be granted).

As one of the first courts to apply *Campbell* explained, all that is necessary to conditionally certify a FLSA collective action at this first step of the collective certification process is evidence that employees have "similar jobs with similar functions and were uniformly subject to [the same] compensation policies" that gave rise to the alleged FLSA violations. *Smothers*, 2019 WL 280294 at *8 (citing *Campbell*, 903 F.3d at 1117). Here, plaintiffs submitted evidence in support of their collective certification motion showing that the Bank's financial center lending officers were subject to a uniform compensation plan; had similar jobs with similar functions; spent more than half their time working in their assigned offices rather than performing outside sales; and until November 2016 were uniformly treated by the Bank as exempt from overtime (a consideration that can even support class certification under the much stricter standards of Fed. R. Civ. P.

23(b)(3), *see In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009)).[2]  Under the lenient "plausibility" standard governing the first step of the collective certification process, *Campbell*, 903 F.3d at 1109-10, that showing is entirely sufficient to warrant collective certification.

The Bank also urges this Court to ignore *Campbell* because it did not involve an exemption defense.  But nothing in *Campbell* suggests that the "similarly situated" analysis should be any different if the employer intends to assert an exemption defense than if it has some other defense.  Rather, the only question for the district court is whether employees are alike with respect to *any* material aspect of their FLSA claims.  *Campbell*, 903 F.3d at 1114, 1115, 1117.  If so, those employees are entitled to litigate collectively, at least to the extent warranted by the collective issues.  *Id.* at 1115.

The Bank's argument that the application of its exemption defense to each individual is the only issue that matters is thus completely contrary to *Campbell*'s direction that FLSA claims may be litigated collectively to the extent they pose common questions of law or fact, and that courts may not refuse collective certification on the ground that individualized issues would predominate over common ones.  *Id.*[3]  Even if the Bank's exemption defenses might later give rise to individualized issues that could become material in the litigation, those issues do not preclude this Court from certifying a collective action here, since *other* issues

_____

[2] *See* Dkt. 36-5, Exh.9, pp. 9-10 (43:25 – 44:18), Exh.10, pp. 43-44, 47-50, 52-53, 56-57, 59, 61, 63 (15:6-15, 16:12-17, 19:17-22, 20:10-13, 21:11 – 22:1, 22:2-11, 22:17-21, 24:23 – 25:1, 25:11-12, 38:19 – 39:1, 42:8-20, 44:3-5, 54:14-19), Exh.11, p.69, ¶2; Dkt. 36-8, ¶4; Dkt. 36-9, ¶4; Dkt. 36-10, ¶5; Dkt. 41, Exh.P, ¶4; and Dkt. 44, Exh.1, p.6 (68:10-14), Exh.2, pp.9-11 (19:8-12, 19:23 – 20:3, 21:6-17), and Exhs. 3-6.

[3] The Bank's reliance on *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935 (9th Cir. 2009), and *Wells Fargo*, 571 F.3d 953, is for that reason misplaced.  Dkt. 58 at 5.  Both cases concerned whether under Rule 23(b)(3) the defendants' exemption defenses gave rise to individualized issues that would predominate over classwide issues.  Rule 23's predominance inquiry is irrelevant to the FLSA collective certification analysis.  *Campbell*, 903 F.3d at 1112-13, 1115.

1  material to the determination of employees' FLSA claims are unquestionably
2  common to all employees.[4]

3       Finally, this Court should reject the Bank's continued reliance on post-
4  deposition corrections to the repeated deposition testimony of its Rule 30(b)(6)
5  witness, Vijay Lala, that financial-center-based lending officers spent more than
6  half their time working in their assigned offices rather than performing outside
7  sales.  *See* Dkt. 58 at 5 n.2; *compare* deposition testimony discussed at Dkt. 51 at
8  20-22.  The Bank's post-deposition changes to Lala's testimony, on which this
9  Court previously relied (Dkt. 46 at 25-26), muddied Lala's testimony from his
10 clear admissions that lending officers' job duties did not subject them to the federal
11 outside sales exemption, to more ambiguous responses suggesting that
12 individualized inquiries might be necessary to determine whether lending officers
13 work primarily in their assigned offices or in the field.  *Campbell* precludes the
14 Court from crediting the post-deposition corrections over the testimony itself for
15 purposes of the FLSA.  As *Campbell* explains, a district court may not weigh
16 conflicting evidence even at the second step of the collective certification process,
17 after discovery has been completed.  903 F.3d at 1119.  Logic therefore precludes a
18 court from doing so at the first step, which applies the lenient "plausibility"
19 standard to the question whether employees are "similarly situated."[5]

20

21       [4] This Court based its November 27, 2018 FLSA ruling on the Bank's outside
22 sales exemption defense only.  Dkt. 46 at 25-26.  As plaintiffs have explained, the
   Bank's other exemption defenses (Dkt. 57 at 6) present entirely common issues of
23 law and fact and plainly do not apply to financial center lending officers.  *See* Dkt.
   51 at 28-30 (discussing administrative and "highly compensated employee"
24 exemptions).

25       [5] *See also Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477 at *4 (E.D. Cal.
   Oct. 3, 2005) (making first-step "similarly situated" determination based on two
26 plaintiff declarations notwithstanding defendants' hearsay and foundation
   objections, while recognizing that declarants' testimony might not be sufficient to
27 satisfy plaintiffs' burden of proof at trial); *Sexton v. Franklin First Fin. Ltd.*, 2009
   WL 1706535 at *6-7 (E.D.N.Y. June 16, 2009) (declining, in first-step "similarly
28 situated" determination, to resolve credibility challenges to plaintiffs' declarations;
   collecting cases); *Ballaris v. Wacker Siltronic*, 2001 WL 1335809 at *2-3 (D. Or.
   Aug. 24, 2001) (declining to adjudicate potential differences among employees in

## II.   There Is No Reason to Delay Collective Certification and Notice to Potential Collective Action Participants.

The Bank revealed for the first time in its February 15, 2019 OSC response that while it was fighting collective certification here, it was busy converting a New York state-law lawsuit, *Flanagan v. Bank of America*, No. 613647/2018 (N.Y. Sup. Ct.), into a nationwide FLSA/multi-state class and collective action for purpose of settling *all* of the covered lending officers' claims under the FLSA, New York, California, and Massachusetts law.  None of those FLSA or non-New York claims were included in the original complaint or the First Amended Complaint in the New York case, and were not added until the Bank recently agreed with the New York plaintiffs' lawyers to stipulate to a Second Amended Complaint in conjunction with their proposed settlement.  Haffner Decl., ¶¶2-4 & Exhs.1-3 [*Flanagan* Complaint, FAC and SAC]; Dkt. 58-1 at p. 41 of 70, ¶2.A.

In plain violation of this Court's rule that parties must disclose any related cases pending in any other court, L.R. 83-1.4.1, the Bank failed to disclose the existence of *Flanagan* or the expanded sue-and-settle scheme in *Flanagan* to this Court or to plaintiffs until February 15, 2019.  (The Bank also concealed the existence of *Tripes v. Bank of America*, S.D. Cal. Case No. 3:18-cv-01250-JM-RBB, filed in June 2018, which was disclosed for the first time in the *Flanagan* preliminary approval papers, Dkt. 58-1 at p. 14 of 70, n.4; *see* Haffner Decl., ¶5 & Exh.4.)

In an effort to capitalize on its wrongful conduct and lack of candor, the Bank now seeks to deter or delay the issuance of an FLSA collective action notice from this Court (even though the Bank's position in *Flanagan* obviously acknowledges that its lending officers *are* "similarly situated" as a matter of federal *and* state law).  While the Bank confidently asserts that its New York settlement will be approved and that the "overwhelming majority" of lending

the first-step "similarly situated" determination while acknowledging that such differences might exist).

**Plaintiffs' Reply in Response to Feb. 1, 2019 Order**

officers will release their FLSA claims, making FLSA notice here unnecessary, Dkt. 58 at 7-8, that is far from a foregone conclusion.  Plaintiffs here are preparing to move to intervene in the New York action, and will explain why the settlement substantially undervalues the California class claims and the nationwide FLSA collective claim.  Haffner Decl., ¶6-10; Exh.5-7 [judgment and breakdown of class judgment in *Ibarra v. Wells Fargo*].  Meanwhile, notice to employees of the New York FLSA settlement is tied to the date for *final* settlement approval (Dkt. 58-1 at p. 22 of 70, ¶7; *id.* at p. 42-43 of 70, ¶C.1), which could be well in the future, if it happens at all.  Because the statute of limitations on each employee's FLSA claim continues to run until that individual files a Consent to Sue, 29 U.S.C. §256, postponing notice to employees of *this* FLSA action pending the lengthy settlement approval process in the New York trial court threatens to substantially harm the interests of all potential collective action participants who do not accept the New York settlement (if the settlement approval process ever gets that far).

Several months have passed since this Court denied conditional FLSA certification. In light of *Campbell*, and given the consequences to the Bank's lending officers of not receiving timely notice of their FLSA rights, this Court should promptly conditionally certify the FLSA collective action and issue notice to lending officers, before their statutes of limitations run even further.

## CONCLUSION

For the foregoing reasons and those stated in plaintiffs' previous briefing in support of the motion for collective certification (Dkt. 36-1, 43) and motion to certify the Court's November 27, 2018 Order for interlocutory appeal (Dkt. 51, 54), this Court should grant conditional certification of the proposed FLSA collective action and order notice of this action to issue to all financial center lending officers nationwide without further delay.

DATED:  February 20, 2019                **HAFFNER LAW PC**
                                                          By:  /s/ Joshua H. Haffner

Joshua H. Haffner
Attorneys for Plaintiffs Jose
Fernandez and Alex Yong

DATED:  February 20, 2019          **STEVENS, L.C.**
                                    By:   /s/ Paul D. Stevens
                                          Paul D. Stevens
                                          Attorneys for Plaintiffs Jose
                                          Fernandez and Alex Yong


DATED:  February 20, 2019          **THIERMAN BUCK LLP**
                                    By:   /s/ Mark R. Thierman
                                          Mark R. Thierman
                                          Joshua D. Buck
                                          Leah L. Jones
                                          Attorneys for Plaintiff Joshua Boswell

**Plaintiffs' Reply in Response to Feb. 1, 2019 Order**